**SO ORDERED.**

**SIGNED December 02, 2009.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **HARVEST OIL & GAS, LLC,** *et al* | § | **CASE NO. 09-50397 and** |
| | § | **(Jointly Administered)** |
| **Debtors** | § | |

---

### ORDER CONFIRMING DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE (AS MODIFIED AS OF NOVEMBER 25, 2009)

This matter came before the Court on the confirmation of the Debtors' Second Amended Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (As Modified as of November 25, 2009) [Doc. #855-1] (the "Plan") filed by Harvest Oil & Gas, LLC ("Harvest Oil"), Saratoga Resources, Inc. ("Saratoga"), The Harvest Group LLC ("Harvest Group," and together with Harvest Oil, the "Harvest Companies") Lobo Operating, Inc. ("Lobo Operating"), and Lobo Resources, Inc. ("Lobo Resources" and together with Lobo Operating, the "Lobo Companies"), each a debtor and debtor-in-possession (Harvest Oil, Saratoga, Harvest

Group, Lobo Operating, and Lobo Resources, individually referred to herein as a "Debtor" and collectively referred to herein as the "Debtors").

The Court having considered (a) the Plan, (b) all other documents and notices related to the Plan that are part of the record of these cases, (c) the record of the entire above-captioned cases, (d) Amended Certification of Kristen M. Reyna with Respect to the Tabulation of Ballots on the Debtors' Second Amended Plan of Reorganization Pursuant to the United States Bankruptcy Code [Doc. #824] ("Ballot Tabulation"), (e) the objections filed with respect to the confirmation of the Plan, and (f) the evidence presented and the argument of counsel at the Confirmation Hearing[1]; and the Court having determined, for oral reasons assigned in open court, that just cause has been established for the relief requested by the Debtors and that all requirements for the confirmation of the Plan have been satisfied, **IT IS HEREBY ORDERED THAT:**

1. <u>Confirmation of the Plan</u>. The Plan, attached hereto as **Exhibit A**, is hereby confirmed.

2. <u>Injunction</u>. As and to the extent not inconsistent with sections 524 and 1141 of the Bankruptcy Code, and except as otherwise expressly provided in the Plan (including in Section 4.2 and Section 4.3) or this Order, all Entities who have held, hold, or may hold Claims against, or Equity Interests in, the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or the Reorganized Debtors on account of any such Claim or Equity Interest; (c)

---

[1] All provisions of the Plan, including all definitions therein, are adopted as part of this Confirmation Order as if set forth in this Order *in extenso*. The failure specifically to include or reference any particular provisions of the Plan in this Confirmation Order shall not diminish or impair the efficacy of such provisions.

creating, perfecting or enforcing any Lien against the Debtors or Reorganized Debtors, or against any of their Assets, on account of any such Claim or Equity Interest; and (d) asserting any right of setoff, subrogation or recoupment of any kind (except under section 362(b)(26) of the Bankruptcy Code as provided in section 553 of the Bankruptcy Code) against any obligation due from the Debtors or Reorganized Debtors or against the Assets of the Debtors or Reorganized Debtors on account of any such Claim or Interest.

3.  <u>Discharge of Debtors and Claims</u>. Except as otherwise provided in the Plan (including in Section 4.2, Section 4.3, Section 7.3(b), Section 7.3(c), and Section 7.4), the rights afforded herein and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of every nature, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or the Reorganized Debtors, or any of their Assets. As and to the extent not inconsistent with sections 524 and 1141 of the Bankruptcy Code, and except as otherwise provided in the Plan (including in Section 4.2, Section 4.3, Section 7.3(b), Section 7.3(c), and Section 7.4), subject to the occurrence of and as of the Effective Date (i) all such Claims against, and all Equity Interests in, the Debtors shall be satisfied, discharged, and released in full and (ii) all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtors to the extent the Claims are satisfied in full, their Assets, or any other or further Claims or Equity Interests based upon any act or omission, transaction, or other activity of any kind or nature, whether known or unknown, that occurred prior to the Effective Date, whether or not (a) a proof of claim or interest based upon such Claim or Equity Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim or Equity Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim or Equity Interest has accepted the Plan; <u>provided</u> that the discharge shall not

3

apply to Reorganized Debtors' obligations under the Plan or any Plan Document or the Debtors' contingent liability (if any) for plugging, abandonment, and/or reclaiming wells, facilities, and pipelines, whether such liabilities are direct or arise through contractual indemnity obligations; provided, further, that the discharge shall not apply to the Equity Interests in the Harvest Companies or the Lobo Companies. Except as provided herein or in the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor. Nothing in the Plan, this Order or the application of sections 524 and 1141 of the Bankruptcy Code shall impair or alter in any manner whatsoever the obligations of any of the Debtors (i) to plug and abandon any of the wells owned or previously owned or (ii) to remediate the surface lands affected by the mineral interests owned or previously owned by the Debtors; this non-impairment includes the rights of any party under any applicable law, operating agreement or other contractual relationship with the Debtors including but not limited to (i) any right to assert any claim against the Debtors within the time periods established under non-bankruptcy law or contractual provisions, (ii) any right to set off and/or recoup claims in the future under applicable non-bankruptcy law, (iii) assert and perfect security interests or liens under applicable non-bankruptcy law or contractual provisions or (iv) serve to release, discharge or enjoin the enforcement of any of the Debtors' obligations for the plugging, abandonment and remediation related to all mineral interests owned or previously owned by any of the Debtors.

4. Exculpations. As and to the extent not inconsistent with section 524(e) of the Bankruptcy Code and with 26 U.S.C. § 6672, each of the officers, directors, managers, members, and professionals of the Debtors, Macquarie, the Wayzata Parties, the Unsecured Creditors' Committee, and the Equity Holders' Committee shall have no liability to any holder of a Claim or Equity Interest or other Entity (including the foregoing Entities) for any act, event, or

4

omission in connection with, relating to, or arising out of the Bankruptcy Cases, the negotiation of the Plan, the Consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for any liability based on willful misconduct or gross negligence. In all such instances, the above-referenced parties shall be and have been entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities in connection with the Bankruptcy Cases and under the Plan. Such exculpation shall not extend to any post-Petition Date act of any Entity other than in connection with that Entity's official capacity in the Bankruptcy Cases.

5. <u>Authorization to Consummate Plan</u>. Bankruptcy Rules 3020(e) and 6006(d) shall not be applicable to this Confirmation Order, and the Debtors are authorized to consummate the Plan immediately upon the satisfaction or waiver, as applicable and in accordance with the provisions of the Plan, of the conditions precedent set forth in section 11.1 of the Plan.

###

This order was prepared and submitted by:
Robin B. Cheatham (#4004)
John M. Duck (#5104)
John A. Lee, (TX Bar #12125400)
Lisa M. Hedrick (#26421)
David K. Bowsher, (AL Bar #ASB 1703-D56B)
JoAnn J. Courcelle, (#26941)
**ADAMS AND REESE LLP**
4500 One Shell Square
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210

**EXHIBIT "A"**

**DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE
(AS MODIFIED AS OF NOVEMBER 25, 2009)**

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| HARVEST OIL & GAS, LLC, *et al.* | § | Case No. 09-50397 |
| | § | (Jointly Administered) |
| Debtors | § | |

## DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE (AS MODIFIED AS OF NOVEMBER 25, 2009)

ROBIN B. CHEATHAM
JOHN M. DUCK
LISA M. HEDRICK
DAVID K. BOWSHER
JOHN A. LEE
JOANN J. COURCELLE
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
*Attorneys for the Debtors*


PAUL J. GOODWINE
Schully, Roberts, Slattery & Marino,
A Professional Law Corporation
1100 Poydras Street, Suite 1800
New Orleans, Louisiana 70163
Telephone: (504) 585-7800
Facsimile: (504) 585-7890
*Special Counsel for the Debtors*

DATED: November 25, 2009

4377239_6.DOC

# INTRODUCTION

Pursuant to chapter 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Saratoga Resources, Inc. ("Saratoga"), Harvest Oil & Gas, LLC ("Harvest Oil & Gas"), The Harvest Group, LLC ("Harvest Group" and together with Harvest Oil & Gas, the "Harvest Companies"), Lobo Operating, Inc. ("Lobo Operating"), and Lobo Resources, Inc. ("Lobo Resources" and together with Lobo Operating, the "Lobo Companies"), each a debtor and debtor-in-possession (Harvest Oil & Gas, Saratoga, Harvest Group, Lobo Operating, and Lobo Resources, individually referred to herein as a "Debtor" and collectively referred to herein as the "Debtors"), respectfully propose the following Second Amended Plan of Reorganization (as modified as of November 25, 2009) (as it may be further amended or supplemented from time to time, and including all Exhibits and Schedules, the "Plan"):

## ARTICLE I
## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, DEFINED TERMS

Section 1.1 **Rules of Interpretation**. Whenever appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender. Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions. Any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented. Unless otherwise specified, all references in the Plan to Sections, Articles, Exhibits, and Schedules are references to Sections, Articles, Exhibits, and Schedules of or to the Plan. Captions and headings to Sections, Articles, Exhibits, and Schedules are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. In the event of a conflict between the terms of the body of this Plan and the terms of any Exhibit or Schedule, the terms of the body of this Plan shall control. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning and effect as the word "shall." Any reference herein to any Law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time. The words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Plan in its entirety and not to any particular provision hereof. With respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including." The rules of construction set forth in section 102 of the Bankruptcy Code shall apply. Any term used in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to them in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

Section 1.2 **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2

Section 1.3 **Governing Law**. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed in accordance with, the Laws of the State of Louisiana, without giving effect to the principles of conflicts of laws thereof.

Section 1.4 **Defined Terms**. The following terms, as used herein, have the following meanings:

"Additional Interest" has the meaning set forth in Section 4.3 of the Plan.

"Administrative Expense Claim" means any Claim constituting a cost or expense of the administration of the Bankruptcy Cases asserted under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the administration and implementation of the Plan, the administration, prosecution or defense of Claims by or against the Debtors and for distributions under the Plan, any Claims for compensation and reimbursement of expenses arising during the period from and after the Petition Date and to the Effective Date or otherwise in accordance with the provisions of the Plan, and any fees or charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930; provided that Professional Fee Claims shall not constitute Administrative Expense Claims.

"Affiliate" means, as to any Entity, any Subsidiary of such Entity, or any other Entity which, directly or indirectly, controls, is controlled by, or is under common control with, such Entity. For the purposes of this definition, "control" (including with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any Entity, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Entity, whether through the ownership of voting securities or partnership interests, or by contract or otherwise.

"Allowed" means, with reference to any Claim or Equity Interest, (a) any Claim against or Equity Interest in any of the Debtors which has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and as and to the extent that no contrary proof of claim or interest has been filed, (b) any Claim or Equity Interest allowed hereunder, (c) any Claim or Equity Interest which is not Disputed, or (d) any Claim or Equity Interest which, if Disputed, (i) as to which, pursuant to the Plan or a Final Order of the Bankruptcy Court, the liability of the Debtors and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court, or (ii) has been allowed hereunder or by Final Order; provided, however, that any Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims or "Allowed" Equity Interests hereunder. Unless otherwise specified herein, in section 511 of the Bankruptcy Code, or by order of the Bankruptcy Court, "Allowed" Administrative Expense Claims, "Allowed" Claims, or "Allowed" Equity Interests shall not, for purposes of computation of distributions under the

3

Plan, include interest on such Administrative Expense Claim, Claim or Equity Interest from and after the Petition Date.

"Amended Organizational Documents" means the Amended and Restated Certificate of Incorporation, the Amended and Restated Bylaws, and any other similar documents of the Reorganized Debtors required to implement the Plan, all of which shall comply with the requirements of 11 U.S.C. §§ 1123(a)(6)-(7).

"Applicable Fees and Costs" means, if and to the extent not included in an Allowed Claim, the Allowed fees, costs, and expenses (including Professional Fee Claims) due to the holder of an Allowed Claim (if any) under the written agreement with the Debtor(s) giving rise to the Allowed Claim or, if there is no such an agreement or applicable Law dictates that such an agreement does not control, under applicable Law.

"Applicable Interest Period" means the period of time from the Petition Date to the date an Allowed Claim is paid in full, or such other period of time (if any) for which interest on an Allowed Claim, or portion thereof, would be due under the Bankruptcy Code (including sections 506(b) and 726(a)).

"Applicable Interest Rate" means the interest rate on the amount of an Allowed Claim (or portion thereof) that is specified in the written agreement with the Debtor(s) giving rise to the Allowed Claim (or portion thereof) or, if there is no such an agreement or applicable Law dictates that such an agreement does not control, the interest rate specified by applicable Law.

"Assets" means all assets of any nature whatsoever, including the property of the Estates pursuant to section 541 of the Bankruptcy Code, Causes of Action, Cash, Cash equivalents, claims of right, interests and property, real and personal, tangible and intangible.

"Balloon Payment" means, with respect to a loan, debt, or other right to payment, the payment of all outstanding principal and all accrued but unpaid interest.

"Bankruptcy Cases" means the bankruptcy cases filed by the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, which are being jointly administered under Case No. 09-50397.

"Bankruptcy Causes of Action" means all Claims and Causes of Action of the Debtors against any and all third parties of any type or description, including Claims for the recovery of (a) transfers of Cash, offsets, debt forgiveness and other types or kinds of property, or the value thereof, recoverable pursuant to sections 506, 507, 510, 542, 543, 544, 545, 547,548, 549, 550, 551 and 553 of the Bankruptcy Code, or otherwise applicable state or other law; (b) damages, general, exemplary, or both, or other relief relating to or based upon (i) fraud, negligence, gross negligence, willful misconduct, breach of contract or any tort actions, (ii) violations of federal or state laws, (iii) breaches of fiduciary or agency duties or professional malpractice, (iv) alter ego or other liability theories; (c) any and all other damages or other relief based upon any other claim or Cause of Action of the Debtors to the extent not settled by Final Order prior to Confirmation and not specifically compromised or released pursuant to the Plan or an agreement referred to, or incorporated into, the Plan or Final Order entered after notice and opportunity for hearing; (d) any Claims or Causes of Action of the Debtors for equitable subordination under

4

section 510(c) of the Bankruptcy Code or under other applicable laws; and (e) all unresolved objections to any Disputed Claims.

"Bankruptcy Code" has the meaning set forth in the initial paragraph hereof.

"Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Louisiana or such other court having jurisdiction over the Bankruptcy Cases.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Bankruptcy Cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court.

"Business Day" means a day other than a Saturday, a Sunday or any other day on which commercial banks in Lafayette, Louisiana are required or authorized to close by law or executive order.

"Cash" means the lawful currency of the United States of America.

"Causes of Action" means any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands of the Debtors whatsoever, whether known or unknown, in law, equity or otherwise, including any and all Bankruptcy Causes of Action or other causes of action under title 11 of the United States Code. Causes of Action include those described on **Exhibit G** of the Disclosure Statement.

"Claim" means any right to payment from any of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from any of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Class" means a category of holders of Claims or Equity Interests, as more fully described in Article III of the Plan.

"Clerk" means the clerk of the Bankruptcy Court.

"Collateral" means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code, or other applicable Law.

"Confirmation" means the entry of the Confirmation Order.

"Confirmation Date" means the date upon which the Clerk enters the Confirmation Order on the docket in the Bankruptcy Cases.

5

"Confirmation Hearing" means the hearing to consider Confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as the same may be adjourned from time to time.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

"Debtor" has the meaning set forth in the initial paragraph hereof.

"Debtors" has the meaning set forth in the initial paragraph hereof.

"Disclosure Statement" means the Second Amended Disclosure Statement filed by the Debtors on October 6, 2009, as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions hereof relating to the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"Disputed Claim" means any Claim against any of the Debtors, to the extent the allowance of which is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been resolved in this Plan or withdrawn or determined by a Final Order.

"Distribution" means a distribution of Cash or other non-Cash consideration made by the Debtors or, after the Effective Date, the Reorganized Debtors pursuant to the Plan.

"Effective Date" means the time on the first Business Day (a) which is on or after the date of the entry of the Confirmation Order and (b) on which (i) no stay of the Confirmation Order is in effect and (ii) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in Section 11.1.

"Entity" means a person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a Governmental Authority or any subdivision of any of the foregoing or any other entity.

"Equity Holders' Committee" means the official committee (including any interim committee) for the holders of Equity Interests in the Debtors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102, as it may be constituted from time to time.

"Equity Interest" has the meaning assigned to the term "Equity Security" in section 101(16) of the Bankruptcy Code. Except as otherwise indicated, references to Equity Interests in this Plan shall be deemed to refer to Equity Interests in the Debtors.

"Estates" means the estates created upon the commencement of the Bankruptcy Cases by section 541 of the Bankruptcy Code.

6

"Federal Interest Rate" means the interest rate calculated in accordance with 28 U.S.C. § 1961 for the Applicable Interest Period.

"Fee Application" means an application of a Professional under section 330, 331, 503, 506, or 1129(a)(4) of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Bankruptcy Cases.

"File" or "Filed" means file or filed with the Bankruptcy Court in the Bankruptcy Cases.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022 as applied to these Bankruptcy Cases.

"Final Order" or "Final Judgment" means an order or judgment of a court of competent jurisdiction that has been entered and not reversed, stayed, modified, or amended.

"General Unsecured Claim" means a Claim that is not a/an (a) Administrative Expense Claim, (b) Professional Fee Claim, (c) Priority Unsecured Tax Claim, (d) Priority Unsecured Claim, (e) Secured Claim, or (f) Equity Interest. General Unsecured Claims includes all other Claims not separately classified under the Plan or provided for in Article II.

"Governmental Authority" means any court, tribunal, or governmental department, commission, board, bureau, agency or instrumentality of any nation or of any province, state, commonwealth, nation, territory, possession, county, parish, municipality, or other subdivision thereof, whether now or hereafter constituted or existing.

"Harvest Companies" has the meaning set forth in the initial paragraph hereof.

"Harvest Group" has the meaning set forth in the initial paragraph hereof.

"Harvest Oil & Gas" has the meaning set forth in the initial paragraph hereof.

"Impaired" or "Impairment" has the meaning set forth in section 1124 of the Bankruptcy Code.

"Intercreditor Agreement" means that certain Intercreditor Agreement dated as of July 14, 2008 among Saratoga, Macquarie and Wayzata.

"Interest" means the rights of a stockholder that owns shares, warrants or options in any of the Debtors arising from his or her status as holder of an Equity Interest.

"Laws" means all applicable statutes, laws, ordinances, regulations, orders, writs, injunctions or decrees of any state, commonwealth, nation, territory, possession, county, township, parish, municipality or Governmental Authority.

"Lender Professional Fees and Expenses Claim" means a Claim or portion thereof by Wayzata or any Affiliate thereof in respect of fees and expenses of lawyers, accountants, consultants, advisors, or other professionals.

7

"Lien" means a lien, security interest, or other interest or encumbrance as defined in section 101(37) of the Bankruptcy Code asserted against any property of the Estate. "Lien" includes "privileges" under the Laws of the State of Louisiana (including the Oil Well Lien Act).

"Lobo Companies" has the meaning set forth in the initial paragraph hereof.

"Lobo Operating" has the meaning set forth in the initial paragraph hereof.

"Lobo Resources" has the meaning set forth in the initial paragraph hereof.

"Macquarie" means Macquarie Bank Limited, as Administrative Agent and Lender.

"Macquarie Claim" means all Claims of Macquarie based upon the Macquarie Credit Agreement.

"Macquarie Amended Credit Agreement" has the meaning set forth in Section 4.2(b)(ii).

"Macquarie Credit Agreement" means the Amended and Restated Credit Agreement by and among Macquarie, Saratoga, and certain of their Affiliates dated on or about July 14, 2008, and all related agreements, guarantees, financing statements, mortgages, pledges, and other documents.

"Management Note Claim" means all Claims of Thomas F. Cooke and Andrew Clifford based upon the Management Notes.

"Management Notes" means the Subordinated Promissory Note by and between Saratoga and Thomas F. Cooke dated on or about July 14, 2008, and the Subordinated Promissory Note by and between Saratoga and Andrew Clifford also dated on or about July 14, 2008.

"Non-Warrant Equity Interests" means all Equity Interests other than Warrants.

"Oil Well Lien Act" means the Louisiana Oil, Gas, and Water Oil Well Lien Act, LSA-R.S. 9:4861, *et seq.*

"Oil Well Lien Act Claim 90-Day Full Pay Option" has the meaning set forth in Section 4.4(a)(ii).

"Oil Well Lien Act Claim Effective Date Pay Option" has the meaning set forth in Section 4.4(a)(ii).

"Oil Well Lien Act Claims" means all Claims based upon the Oil Well Lien Act.

"Person" means a person as defined in section 101(41) of the Bankruptcy Code.

"Petition Date" means the date (March 31, 2009) and time at which the Debtors commenced the Bankruptcy Cases.

"Plan" has the meaning set forth in the initial paragraph hereof.

8

"Plan Documents" means all of the agreements, instruments and documents that are executed and delivered to effectuate the terms and conditions of or transactions contemplated by the Plan.

"Priority Unsecured Claims" means any Claim against the Debtors entitled to priority in right of payment under sections 507(a)(3)-(7) of the Bankruptcy Code.

"Priority Unsecured Tax Claim" means any Claim against the Debtor entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent entitled to such priority.

"Professional" means an Entity (a) employed in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) to whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4), 506, or 1129(a)(4) of the Bankruptcy Code.

"Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to sections 330, 331, 503, 506, and/or 1129(a)(4) of the Bankruptcy Code (including Lender Professional Fees and Expenses Claims), and unpaid as of the Confirmation Date.

"Released Agents" has the meaning set forth in Section 7.4.

"Released Parties" means each of the Debtors, the Reorganized Debtors, the Debtors' Estates, Macquarie and the Wayzata Parties.

"Reorganized Debtors" means the Debtors following the Effective Date.

"Reorganized Saratoga" means Saratoga following the Effective Date.

"Saratoga" has the meaning set forth in the initial paragraph hereof.

"Schedules" means the respective schedules of assets and liabilities, the list of Interests, and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statement have been or may be supplemented or amended.

"Secured Claim" means a Claim against any of the Debtors that is secured by a validly perfected Lien on collateral or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Collateral or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code.

"State Lessor Audit Royalty Claim" means a Claim against any of the Debtors that is (a) based upon under- or non-payment of royalties due under an applicable lease of property of the State of Louisiana including amounts due for cure of defaults under assumed leases and pecuniary losses resulting from defaults under such leases, and (b) not a Priority Unsecured Tax Claim.

9

"Subsidiary" means, for any Entity, any corporation or other entity of which securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other Entities performing similar functions (including that of a general partner) are at the time directly or indirectly owned, collectively, by such Entity and any Subsidiaries of such Entity. The term Subsidiary shall include Subsidiaries of Subsidiaries (and so on).

"Taxes" means all taxes, assessments, filing or other fees, levies, imposts, duties, deductions, withholdings, stamp taxes, interest equalization taxes, capital transaction taxes, severance taxes, foreign exchange taxes or other charges, or other charges of any nature whatsoever, from time to time or at any time imposed by Law or any federal, state or local governmental agency, and "Tax" means any one of the foregoing.

"Unimpaired" has the meaning set forth in section 1124 of the Bankruptcy Code.

"Unsecured Creditors' Committee" means the official committee for the holders of General Unsecured Claims against the Debtors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102, as it may be constituted from time to time.

"Warrant" has the meaning set forth in section 101(16)(C) of the Bankruptcy Code.

"Wayzata" means Wayzata Investment Partners LLC.

"Wayzata Allowed Secured Claim" has the meaning set forth in Section 4.3(b).

"Wayzata Amended and Restated Credit Agreement" means the Amended and Restated Credit Agreement by and among Reorganized Saratoga, as borrower, the other Reorganized Debtors as guarantors, Wayzata, individually and as administrative agent and the Wayzata Lenders that will amend and restate the Wayzata Credit Agreement as of the Effective Date and, together with the other Wayzata Secured Credit Documents, will govern the terms and conditions of the Wayzata Secured Tranche.

"Wayzata Claim" means all Claims of the Wayzata Parties based upon the Wayzata Credit Agreement.

"Wayzata Credit Agreement" means the Credit Agreement dated as of July 14, 2008, by and among Saratoga, as borrower, the other Debtors, as guarantors, Wayzata, individually and as administrative agent and the Wayzata Lenders.

"Wayzata Lenders" means Wayzata Opportunities Fund LLC and Wayzata Opportunities Fund II, L.P.

"Wayzata New Warrant" has the meaning set forth in Section 4.3(c)(vi).

"Wayzata Parties" means Wayzata and the Wayzata Lenders.

"Wayzata Secured Credit Documents" has the meaning set forth in Section 4.3(c)(ii) of the Plan.

10

"Wayzata Secured Notes" means the secured promissory notes evidencing Reorganized Saratoga's indebtedness to the Wayzata Lenders as set forth in the Wayzata Amended and Restated Credit Agreement and consisting of the Wayzata Secured Tranche.

"Wayzata Secured Tranche" means that portion of the Wayzata Claim being restructured as the Wayzata Secured Tranche as described in Section 4.3(c)(ii) of the Plan.

"Wayzata Unsecured Credit Agreement" means that certain Credit Agreement by and among Reorganized Saratoga, as borrower, the other Debtors as guarantors, Wayzata, individually and as administrative agent, and the Wayzata Lenders dated as of the Effective Date, that will, together with the other Wayzata Unsecured Credit Documents, govern the terms and conditions of the Wayzata Unsecured Tranche.

"Wayzata Unsecured Credit Documents" has the meaning set forth in Section 4.3(c)(iii) of the Plan.

"Wayzata Unsecured Notes" means the promissory notes evidencing Reorganized Saratoga's indebtedness to the Wayzata Lenders as set forth in the Wayzata Unsecured Credit Agreement and consisting of the Wayzata Unsecured Tranche.

"Wayzata Unsecured Tranche" means that portion of the Wayzata Claim being restructured as the Wayzata Unsecured Tranche as described in Section 4.3(c)(iii) of the Plan.

"Wayzata Warrant" means that certain warrant dated as of July 14, 2008 issued to Wayzata immediately prior to the closing of the acquisition of the Harvest Companies for five percent (5%) of the issued and outstanding shares of common stock of Saratoga at that time.

## ARTICLE II
## NON-CLASSIFIED CLAIMS AND CERTAIN FEES AND TAXES

Section 2.1 **Administrative Expense Claims.**

(a) Allowed Administrative Expense Claims Against the Debtors. Subject to the bar date provisions of Section 2.1(b), the holders of Allowed Administrative Expense Claims against any of the Debtors, unless otherwise agreed to by the Debtors and the holder(s) or as otherwise set forth in this Plan, are entitled to priority under section 507(a)(2) of the Bankruptcy Code. An Entity entitled to payment pursuant to sections 546(c) or 553 of the Bankruptcy Code, and an Entity entitled to payment of administrative expenses pursuant to sections 503 and 507(a) of the Bankruptcy Code, shall receive from the Reorganized Debtors, on account of such Allowed Administrative Expense Claim, Cash in the amount of such Allowed Administrative Expense Claim on or before the later of the Effective Date or thirty (30) days after becoming an Allowed Administrative Expense Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates), unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such Entity; provided that an Allowed Administrative Expense Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid by the Debtors or the Reorganized Debtors in the ordinary course of business.

11

(b)   <u>Bar Date for Filing Applications for Allowance and Payment of</u> <u>Administrative Expense Claims</u>.  Except as otherwise provided in section 503(b)(1)(D) of the Bankruptcy Code, applications for allowance and payment of Administrative Expense Claims must be filed on or within thirty (30) days after the Effective Date.  The Court shall not consider any applications for the allowance of an Administrative Expense Claim filed after such date, and any such Administrative Expense Claim shall be discharged and forever barred.   Any Administrative Expense Claim that becomes an Allowed Administrative Expense Claim after the Confirmation Date will be treated like other Allowed Administrative Expense Claims and will be paid on or before the later of the Effective Date or thirty (30) days after becoming an Allowed Administrative Expense Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates), unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and the holder of such Claim.  Any such Claim that is Allowed, but determined not to be an Administrative Expense Claim, will be treated as a General Unsecured Claim.

Section 2.2   **Professional Fee Claims**.

(a)   <u>Allowed Professional Fee Claims Against the Debtors</u>.   Except as otherwise provided herein (including in Section 4.2, Section 4.3, Section 4.4, Section 4.5, Section 4.6, and Section 4.7), each holder of an Allowed Professional Fee Claim shall receive from the Reorganized Debtors, on account of such Allowed Professional Fee Claim, Cash in the amount of such Allowed Professional Fee Claim on or before the later of the Effective Date or thirty (30) days after becoming an Allowed Professional Fee Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates), unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder.  Except as otherwise provided herein or otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, all secured creditors' Professional Fee Claims shall be subject to section 506(b) of the Bankruptcy Code.

(b)   <u>Bar Date for Filing Applications for Allowance and Payment of</u> <u>Professional Fee Claims Against the Debtors</u>.  Except as otherwise provided herein (including in Section 4.2 and Section 4.3), applications for allowance and payment of Professional Fee Claims (including Professional Fee Claims that are part of a Claim for Applicable Fees and Costs) incurred on or before the Confirmation Date must be filed on or within sixty (60) days from the Effective Date.  The Bankruptcy Court shall not consider any applications for the allowance of a Professional Fee Claim filed after such date, and any such Professional Fee Claim shall be discharged and forever barred.

Section 2.3   **Priority Unsecured Tax Claims**.

(a)   <u>Allowed Priority Unsecured Tax Claims</u>.  Each holder of an Allowed Priority Unsecured Tax Claim shall receive from the Reorganized Debtors Cash payments in regular monthly installments commencing on the later of the following dates, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates): (i) thirty (30) days after becoming an Allowed Priority Unsecured Tax Claim and (ii) the sooner of (x) the Effective Date and (y) thirty (30) days after the Confirmation Date; which payments will, no later than the five (5) years from the Petition Date, in the aggregate

12

equal the amount of such Allowed Priority Unsecured Tax Claim, with interest at such rate as required by section 511 of the Bankruptcy Code or otherwise required by section 1129(a)(9)(C) or (D) of the Bankruptcy Code, and in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan, unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder.

(b)    Certain Interest and Penalties on Allowed Priority Unsecured Tax Claims. Holders of Priority Unsecured Tax Claims shall not receive any payment on account of penalties, with respect to, or arising in connection with such Priority Unsecured Tax Claims to the extent permissible under applicable Law, except as expressly provided in this Plan. However, such Holders of Priority Unsecured Tax Claims will receive post-Petition Date interest, and any interest due under Section 5.5 shall be measured from the date that payments under Section 2.3(a) begin. The Plan, the Confirmation Order and section 1141(d) of the Bankruptcy Code provide for the discharge of any such Claims for penalties. Holders of Priority Unsecured Tax Claims shall not assess or attempt to collect such penalties from the Debtors, the Reorganized Debtors, the Estates, or from any property thereof, except as General Unsecured Claims pursuant to Section 4.6.

Section 2.4    **Certain Fees and Taxes**.

(a)    U.S. Trustee's Fees.    The Debtors will continue to report to the U.S. Trustee by the twentieth (20th) of each month the total disbursements of each Debtor for the previous month and shall timely pay quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Court enters a Final Decree or an order either converting the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code or dismissing the Bankruptcy Cases. Any such fees outstanding and due as of the Effective Date shall be paid in Cash by the Reorganized Debtors on the Effective Date.

(b)    Disallowance of Special Taxes.    The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable Law, or the making or delivery of any instrument of transfer under this Plan, shall not be subject to any Tax under any state or local law imposing a stamp Tax or similar Tax as provided in section 1146 of the Bankruptcy Code.

Section 2.5    **Plugging and Abandonment Claims**.    Any and all Claims associated with Debtors' liabilities relating to plugging, abandonment, and/or reclaiming wells, facilities, and pipelines, whether arising under contractual indemnity or otherwise, shall be unimpaired and shall be satisfied after the Effective Date in the ordinary course of business.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; BAR DATE

Section 3.1    **Classification**. Pursuant to section 1122 of the Bankruptcy Code, a Claim or Equity Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class, and (ii) the Claim or Equity Interest has not been paid, released, or otherwise compromised before the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims

13

specified in section 507(a)(2) of the Bankruptcy Code, and Priority Unsecured Tax Claims are not classified under the Plan.

Section 3.2 **Identification of Classes**. The following are the designations for the Classes of Claims against the Estate and Interests in the Debtor:

| | | |
|---|---|---|
| Class 1 – Priority Unsecured Claims | Unimpaired | All Allowed Priority Unsecured Claims |
| Class 2 – Macquarie Secured Claim | Impaired | All Allowed Secured Claims arising under the Macquarie Claim |
| Class 3 – Wayzata Secured Claim | Impaired | All Allowed Secured Claims arising under the Wayzata Claim |
| Class 4 – Oil Well Lien Act Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act |
| Class 4(a) – Grand Prairie Levee District A Lease Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect Grand Prairie Levee District A Lease (Plaquemines Parish) |
| Class 4(b) – Louisiana State Lease 195 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 195 (Plaquemines Parish) |
| Class 4(c) - Louisiana State Lease 1227 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 1227 (Plaquemines Parish) |
| Class 4(d) - Louisiana State Lease 2726 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 2726 (Plaquemines Parish) |
| Class 4(e) - Louisiana State Lease 16664 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16664 (Plaquemines Parish) |
| Class 4(f) - Louisiana State Lease 16569 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16569 (Plaquemines Parish) |
| Class 4(g) - Louisiana State Lease 18014 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 18014 (Plaquemines Parish) |
| Class 4(h) - Louisiana State Lease 16432 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16432 (Plaquemines Parish) |

14

| | | |
|---|---|---|
| Class 4(i) - Louisiana State Lease 11189 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 11189 (Plaquemines Parish) |
| Class 4(j) - Louisiana State Lease 5097 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 5097 (St. Mary Parish) |
| Class 4(k) - Louisiana State Lease 16818 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16818 (Plaquemines Parish) |
| Class 4(l) - Louisiana State Lease 16692 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16692 (Plaquemines Parish) |
| Class 4(m) - Louisiana State Lease 4407 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 4407 (Plaquemines Parish) |
| Class 4(n) - Louisiana State Lease 4865 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 4865 (Plaquemines Parish) |
| Class 4(o) - Louisiana State Lease 19680 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 19680 (Plaquemines Parish) |
| Class 4(p) - Louisiana State Lease 16847 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16847 (Plaquemines Parish) |
| Class 4(q) - Louisiana State Lease 335DP Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 335DP (Plaquemines Parish) |
| Class 4(r) - Louisiana State Lease 16443 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16443 (Plaquemines Parish) |
| Class 4(s) - Louisiana State Lease 17621 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 17621 (Plaquemines Parish) |
| Class 4(t) - Louisiana State Lease 18078 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 18078 (Plaquemines Parish) |

15

| | | |
|---|---|---|
| Class 4(u) - Plaquemines Parish Government Agency Lease Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect Plaquemines Parish Government Agency Lease (Plaquemines Parish) |
| Class 4(v) - Louisiana State Lease 1268 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 1268 (Plaquemines Parish) |
| Class 4(w) - Louisiana State Lease 15906 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 15906 (Plaquemines Parish) |
| Class 4(x) - Louisiana State Lease 16393 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16393 (Plaquemines Parish) |
| Class 4(y) - Louisiana State Lease 16392 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16392 (Plaquemines Parish) |
| Class 4(z) - Louisiana State Lease 16773 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16773 (Plaquemines Parish) |
| Class 4(aa) – Louisiana State Lease 16570 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16570 (Plaquemines Parish) |
| Class 4(bb) – Louisiana State Lease 16890 Claims | Impaired | All Allowed Secured Claims arising under the Oil Well Lien Act that affect State Lease 16890 (Plaquemines Parish) |
| Class 5 – Other Secured Claims | Impaired | All Allowed Secured Claims not in Class 2, 3, or 4 |
| Class 6 – General Unsecured Claims | Impaired | All Allowed General Unsecured Claims |
| Class 7 – State Lessor Audit Royalty Claims | Impaired | All Allowed State Lessor Audit Royalty Claims |
| Class 8 – Management Note Claim | Impaired | All Allowed Claims arising under the Management Note Claim |
| Class 9 – Non-Warrant Equity Interests | Impaired | All Allowed Non-Warrant Equity Interests in Saratoga |
| Class 10 – Warrants | Impaired | All Allowed Equity Interests in Saratoga that are Warrants |

Section 3.3 **Claims Bar Date**. Except as otherwise provided herein, in the Bankruptcy Code, in the Bankruptcy Rules, or by order of the Bankruptcy Court, all Claims must

16

be filed with the Bankruptcy Court on or before August 14, 2009; provided that, in accordance with Section 2.2(b), Claims for Applicable Fees and Costs (including Professional Fee Claims) must be filed within sixty (60) days after the Effective Date except as otherwise provided herein. The Bankruptcy Court shall not consider any Claim filed after such dates, and any such Claim shall be discharged and forever barred.

**ARTICLE IV**
**IMPAIRMENT AND VOTING OF CLASSES: TREATMENT OF CLASSES**

Section 4.1    **Class 1 – Priority Unsecured Claims.**

(a)    Impairment and Voting.  Claims in Class 1 are Unimpaired.  Holders of Allowed Priority Unsecured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

(b)    Treatment.  The Reorganized Debtors shall pay to each holder of an Allowed Priority Unsecured Claim Cash in the amount of such Allowed Priority Unsecured Claim on the later of the Effective Date and the date such Priority Unsecured Claim becomes an Allowed Priority Unsecured Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates), unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder.

Section 4.2    **Class 2 – Macquarie Secured Claim.**

(a)    Impairment and Voting.  The Claim in Class 2 is Impaired.  Subject to the terms and conditions of this Plan (including Article V and Article IX), the holder of the Allowed Secured Claim in Class 2 is entitled to vote to accept or reject the Plan.

(b)    Treatment. ·

(i)    The Allowed Secured Claim arising under the Macquarie Claim shall be paid by the Reorganized Debtors in Cash as follows: (x) on the Effective Date, the portion of such Allowed Secured Claim that, pursuant to the terms of the Macquarie Credit Agreement, became due and payable between the Petition Date and the Effective Date, and any and all fees, costs, expenses, including without limitation the attorneys' fees and expenses of counsel for Macquarie; and (y) after the Effective Date, in accordance with the terms of the Macquarie Credit Agreement.

(ii)    The Liens under the Macquarie Credit Agreement and, except as otherwise provided herein, all other terms of the Macquarie Credit Agreement shall be unaffected by the Plan, Confirmation, and Consummation, and such Liens shall maintain the same validity, priority, and extent that existed on the Petition Date.  Except as otherwise provided herein, the Reorganized Debtors agree to be bound by the terms of the Macquarie Credit Agreement.  On the Effective Date and upon execution by the parties thereto, the Macquarie Credit Agreement (as amended, restated, and/or modified in accordance with the Plan, at the sole discretion of Macquarie, the "Macquarie Amended Credit Agreement") shall be binding and enforceable in accordance with its terms upon Macquarie and the Reorganized Debtors.

17

(iii)    To the extent that any provision of the Plan conflicts with the Macquarie Amended Credit Agreement, the provisions of the Macquarie Amended Credit Agreement shall control and supersede the terms of the Plan.

(c)    Cure of Defaults.  On the Effective Date, all defaults that could have arisen before the Effective Date under the Macquarie Credit Agreement shall be deemed cured. This provision shall not apply to representations and warranties made within the Macquarie Amended Credit Agreement by the Debtors or Reorganized Debtors.

Section 4.3    **Class 3 – Wayzata Secured Claim.**

(a)    Impairment and Voting.  The Claim in Class 3 is Impaired.  Subject to the terms and conditions of this Plan, the holders of the Allowed Secured Claim in Class 3 are entitled to vote to accept or reject the Plan.

(b)    Class 3 Allowance.  On the Effective Date, the Wayzata Claim (including the portion of such Claim that, pursuant to the terms of the Wayzata Credit Agreement, became due and payable between the Petition Date and the Effective Date, such as interest at the Applicable Interest Rate for the Applicable Interest Period, and any Applicable Fees and Costs (including Lender Professional Fees and Expenses Claim by Wayzata or any Affiliate)) and any other Claim of Wayzata or any Affiliate, shall be an Allowed Secured Claim hereunder in the amount of $116,000,000 (such Allowed Secured Claim together with any Claim for Additional Interest is herein called the "Wayzata Allowed Secured Claim"); provided, however, that if the Effective Date of the Plan does not occur prior to December 1, 2009, interest at the non-default rate (i.e., 20% per annum) as provided under the Wayzata Credit Agreement ("Additional Interest") shall also be Allowed hereunder and continue to accrue from December 1, 2009 and until the date of the actual occurrence of the Effective Date and the amount of such accrued Additional Interest shall (at the election of the Debtors) be added to the principal balance of the Wayzata Unsecured Tranche or may be paid by the Debtors to Wayzata in Cash on the Effective Date.  The Wayzata Allowed Secured Claim in Class 3 is not, nor shall it be, subject to any objection, discharge, avoidance, counterclaim, abatement, adverse claim, reduction, setoff, recoupment or subordination of any kind by any party, including by the Debtors, the Reorganized Debtors, the Unsecured Creditors' Committee, the Equity Holders' Committee or Macquarie.  The Wayzata Allowed Secured Claim in Class 3 is Allowed under this Plan and none of the Wayzata Parties shall be required to File any further applications with the Bankruptcy Court with respect to the same.

(c)    Treatment.

(i)    Effective Date Payment.  On the Effective Date, the Reorganized Debtors shall pay $14,000,000 in Cash to Wayzata on the Wayzata Allowed Secured Claim.  The remaining balance of the Wayzata Allowed Secured Claim shall be bifurcated into the Wayzata Secured Tranche and Wayzata Unsecured Tranche and documented by, and paid in accordance with, the Wayzata Secured Credit Documents and the Wayzata Unsecured Credit Documents, respectively.

18

(ii)  <u>Wayzata Secured Tranche</u>. On the Effective Date, the principal amount of the Wayzata Secured Tranche shall be $70,000,000. The Wayzata Secured Tranche shall continue to be secured by a Lien on substantially all existing and after acquired property and assets of each of the Reorganized Debtors. In the absence of an event of default resulting in the acceleration thereof or an event requiring the mandatory prepayment thereof under the Wayzata Amended and Restated Credit Agreement, the Wayzata Secured Tranche shall be paid by the Reorganized Debtors in Cash as follows: (x) for a period of thirty-five (35) months following the Effective Date, monthly payments of interest only at a rate of fifteen percent (15%) per annum shall be made on the first day of each calendar month, and (y) on the third (3rd) anniversary of the Effective Date, a Balloon Payment, plus applicable fees, costs and expenses (if any) that have accrued under the Wayzata Amended and Restated Credit Agreement but have not been paid shall be due and payable in Cash in full. The Wayzata Secured Tranche shall be evidenced by the Wayzata Amended and Restated Credit Agreement, the Wayzata Secured Notes, amended or new guaranties, mortgages, security agreements, pledge agreements and officer's certificates and such other necessary and customary documents as are requested by and acceptable to Wayzata to give effect to the Wayzata Amended and Restated Credit Agreement (collectively, the "<u>Wayzata Secured Credit Documents</u>"). The Wayzata Secured Tranche may be voluntarily prepaid at any time in whole or in part without penalty or premium; <u>provided, however</u>, that the Reorganized Debtors may not voluntarily prepay any portion of the Wayzata Secured Tranche unless and until the Wayzata Unsecured Tranche has been repaid in Cash in full.

(iii)  <u>Wayzata Unsecured Tranche</u>. On the Effective Date, the principal amount of the Wayzata Unsecured Tranche shall be $32,000,000 plus the amount of Additional Interest (if any) accrued but unpaid pursuant to the provisions of Section 4.3(b). The Wayzata Unsecured Tranche shall be evidenced by the Wayzata Unsecured Credit Agreement, the Wayzata Unsecured Notes, amended or new guaranties and officer's certificates and such other necessary and customary documents as are requested by and acceptable to Wayzata (collectively, the "<u>Wayzata Unsecured Credit Documents</u>"). Interest shall accrue at the rate of 22.5% per annum on the Wayzata Unsecured Tranche. The Reorganized Debtors shall pay interest to the Wayzata Lenders on a quarterly basis, with such interest being paid in kind and added to the outstanding principal balance of the Wayzata Unsecured Tranche on March 31, June 30, September 30 and December 31 of each year. So long as there is no event of default resulting in the acceleration thereof or an event requiring the mandatory prepayment thereof under the Wayzata Unsecured Credit Agreement, the Wayzata Unsecured Tranche, including all interest paid in kind and added to the principal balance of the Wayzata Unsecured Tranche, together with any accrued but unpaid interest and applicable fees, costs and expenses (if any) that have accrued under the Wayzata Unsecured Credit Agreement but have not been paid, shall be paid in Cash in full on or prior to the third (3rd) anniversary of the Effective Date. Notwithstanding the foregoing, the Reorganized Debtors may elect on any quarterly payment date to pay interest on the Wayzata Unsecured Tranche in Cash at the rate of 18% per annum; <u>provided</u>, that the Reorganized Debtors so inform Wayzata in writing of their election to pay such quarterly interest in Cash at least 30 days prior to the date on which such interest is otherwise

19

payable in kind. The Wayzata Unsecured Tranche may be voluntarily prepaid at any time in whole or in part without premium or penalty.

(iv)     <u>Conflict Between Plan and Credit Documents</u>.  To the extent that any provision of the Plan conflicts with the Wayzata Secured Credit Documents, the provisions of the Wayzata Secured Credit Documents control and supersede the terms of the Plan.  To the extent that any provision of the Plan conflicts with the Wayzata Unsecured Credit Documents, the provisions of the Wayzata Unsecured Credit Documents control and supersede the terms of the Plan.  To the extent any provision of the Plan conflicts with either the Wayzata Warrant or Wayzata New Warrant, the provisions of the Wayzata Warrant and Wayzata New Warrant control and supersede the terms of the Plan.  On the Effective Date, the Wayzata Warrant, and upon execution by the parties thereto, the Wayzata Secured Credit Documents, the Wayzata Unsecured Credit Documents, and the Wayzata New Warrant, shall be binding and enforceable in accordance with their respective terms upon the Wayzata Parties and the Reorganized Debtors.

(v)     <u>Interest Rate Adjustment</u>.  In the event the Reorganized Debtors raise capital through the issuance of common stock of Reorganized Saratoga and use the proceeds thereof to repay all amounts then due and owing under the Wayzata Unsecured Credit Agreement in Cash and in full, the interest rate payable on the Wayzata Secured Tranche under the Wayzata Secured Credit Documents shall be adjusted as follows:

(1)     If, after the Effective Date, but on or before June 30, 2010, the Reorganized Debtors pay to the Wayzata Lenders in Cash the then-outstanding principal amount of the Wayzata Unsecured Tranche and all accrued but unpaid interest and applicable fees, costs and expenses (if any) that have accrued under the Wayzata Unsecured Credit Agreement but have not been paid, then notwithstanding Section 4.3(c)(ii) and upon such payment, the interest rate on the Wayzata Secured Tranche under Section 4.3(c)(ii) and the Wayzata Secured Credit Documents shall be reduced, beginning on the date of payoff of the Wayzata Unsecured Tranche, to 11.5% per annum.

(2)     If, after June 30, 2010 but on or before December 31, 2010, the Reorganized Debtors pay to Wayzata in Cash the then-outstanding principal amount of the Wayzata Unsecured Tranche and all accrued but unpaid interest and applicable fees, costs and expenses (if any) that have accrued under the Wayzata Unsecured Credit Agreement but have not been paid, then notwithstanding Section 4.3(c)(ii) and upon such payment, the interest rate on the Wayzata Secured Tranche under Section 4.3(c)(ii) and the Wayzata Secured Credit Documents shall be reduced, beginning on the date of payoff of the Wayzata Unsecured Tranche, to 12.5% per annum.

(3)     If, after December 31, 2010 but on or before June 30, 2011, the Reorganized Debtors pay to Wayzata in Cash the then-

20

outstanding principal amount of the Wayzata Unsecured Tranche and all accrued but unpaid interest and applicable fees, costs and expenses (if any) that have accrued under the Wayzata Unsecured Credit Agreement but have not been paid, then notwithstanding Section 4.3(c)(ii) and upon such payment, the interest rate on the Wayzata Secured Tranche under Section 4.3(c)(ii) and the Wayzata Secured Credit Documents shall be reduced, beginning on the date of payoff of the Wayzata Unsecured Tranche, to 13.5% per annum.

(vi)     Warrant.  On the Effective Date, Wayzata shall receive a new warrant (the "Wayzata New Warrant") for the same number of common shares in Reorganized Saratoga as provided for in the Wayzata Warrant, which Wayzata New Warrant shall have the same terms and conditions as the Wayzata Warrant; provided, however, the Wayzata New Warrant (x) shall only be exercisable in the event that the Reorganized Debtors raise additional capital through the issuance of new common shares of Reorganized Saratoga after the Effective Date, and (y) shall expire on a date that is three (3) months after the earlier to occur of the maturity date of the Wayzata Secured Tranche or the date of payment in full in Cash of the then-outstanding principal amount of the Wayzata Secured Tranche and all accrued but unpaid interest and applicable fees, costs and expenses (if any) that have accrued under the Wayzata Amended and Restated Credit Agreement but have not been paid.

(vii)     Preservation of Liens.    The Liens under the Wayzata Credit Agreement and other Loan Documents (as defined in the Wayzata Credit Agreement) shall be unaffected and shall not be discharged, released, enjoined, avoided, or impaired by the Plan, Confirmation, the Confirmation Order or consummation of the Plan, and such Liens shall remain and continue in full force and effect with the same validity, priority, and extent that existed on the Petition Date; provided that only the Wayzata Secured Tranche shall continue to be secured by such Liens and that the Wayzata Unsecured Tranche shall be unsecured.    As of the Effective Date, the Debtors, Reorganized Debtors, Unsecured Creditors' Committee, Equity Holders' Committee and Macquarie stipulate to the continuing existence, validity, and priority of such Liens.

(viii)     Guarantees.  The obligations of Reorganized Saratoga under the Wayzata Amended and Restated Credit Agreement and the Wayzata Unsecured Credit Agreement shall continue to be unconditionally guaranteed by all other Reorganized Debtors.

(ix)     Non-Occurrence of Effective Date.  The treatment of the Wayzata Allowed Secured Claim in Class 3 accorded to the holders thereof in this Plan is a compromise and settlement in accordance with Bankruptcy Rule 9019, designed to avoid the costs, risks and uncertainties of further litigation.  For the avoidance of doubt, in the event the Effective Date does not occur by December 31, 2009 (unless extended by the written agreement of the Debtors, Macquarie and Wayzata as provided in Section 11.2), the compromise and settlement (and all stipulations, releases, and waivers) set forth in this Section 4.3 and in Section 7.3(c) and Section 7.4 shall be null and void and of no effect, and shall not constitute or be used as an admission against the Debtors, the

Reorganized Debtors, the Wayzata Parties or any other Entity with respect to any issue or matter in controversy.

(d)　　Cure of Defaults.　On the Effective Date, all defaults that could have arisen before the Effective Date under Wayzata Credit Agreement shall be deemed cured. This provision shall not apply to the representations and warranties made within the Wayzata Secured Credit Documents or the Wayzata Unsecured Credit Documents.

Section 4.4　　**Class 4 – Oil Well Lien Act Claims.**

(a)　　Class 4(a) – Grand Prairie Levee District A Lease Claims

(i)　　Impairment and Voting.　Claims in Class 4(a) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(a) are entitled to vote to accept or reject the Plan.

(ii)　　Treatment.　Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(a) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, (i) (x) ninety percent (90%) of the amount of the Allowed Secured Claim on the later of the Effective Date and the date the Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates) and (y) ten percent (10%) of the amount of the Allowed Secured Claim ninety (90) days after the Effective Date plus interest at the Applicable Interest Rate for the Applicable Interest Period as provided by applicable Law plus the holder's Applicable Fees and Costs as provided by applicable Law that are Allowed; provided that any attorneys' fees due in respect of any Allowed Secured Claim shall not exceed the lesser of (A) the actual amount of reasonable attorneys' fees incurred and (B) ten percent (10%) of the amount of the Allowed Secured Claim (the "Oil Well Lien Act Claim 90-Day Full Pay Option"); or (ii) one hundred percent (100%) of the Allowed Secured Claim on the later of the Effective Date and the date the Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates) plus interest on the Allowed Secured Claim at the Applicable Interest Rate for the Applicable Interest Period as provided by applicable Law plus the holder's Applicable Fees and Costs as provided by applicable Law that are Allowed; provided that any attorneys' fees due in respect of any Allowed Secured Claim shall not exceed the lesser of (A) the actual amount of reasonable attorneys' fees incurred and (B) five percent (5%) of the amount of the Allowed Secured Claim (the "Oil Well Lien Act Claim Effective Date Pay Option").

(b)　　Class 4(b) – Louisiana State Lease 195 Claims

(i)　　Impairment and Voting.　Claims in Class 4(b) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the

22

holders of Allowed Secured Claims in Class 4(b) are entitled to vote to accept or reject the Plan.

(ii)    <u>Treatment.</u> Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(b) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

    (c)    <u>Class 4(c) – Louisiana State Lease 1227 Claims</u>

(i)    <u>Impairment and Voting.</u> Claims in Class 4(c) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(c) are entitled to vote to accept or reject the Plan.

(ii)    <u>Treatment.</u> Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(c) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

    (d)    <u>Class 4(d) – Louisiana State Lease 2726 Claims</u>

(i)    <u>Impairment and Voting.</u> Claims in Class 4(d) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(d) are entitled to vote to accept or reject the Plan.

(ii)    <u>Treatment.</u> Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(d) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

    (e)    <u>Class 4(e) – Louisiana State Lease 16664 Claims</u>

(i)    <u>Impairment and Voting.</u> Claims in Class 4(e) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(e) are entitled to vote to accept or reject the Plan.

(ii)    <u>Treatment.</u> Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(e) in Cash, at the written

election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

    (f)    <u>Class 4(f) – Louisiana State Lease 16569 Claims</u>

    (i)    <u>Impairment and Voting</u>.    Claims in Class 4(f) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(f) are entitled to vote to accept or reject the Plan.

    (ii)    <u>Treatment</u>.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(f) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

    (g)    <u>Class 4(g) – Louisiana State Lease 18014 Claims</u>

    (i)    <u>Impairment and Voting</u>.    Claims in Class 4(g) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(g) are entitled to vote to accept or reject the Plan.

    (ii)    <u>Treatment</u>.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(g) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

    (h)    <u>Class 4(h) – Louisiana State Lease 16432 Claims</u>

    (i)    <u>Impairment and Voting</u>.    Claims in Class 4(h) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(h) are entitled to vote to accept or reject the Plan.

    (ii)    <u>Treatment</u>.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(h) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(i)     Class 4(i) – Louisiana State Lease 11189 Claims

(i)     Impairment and Voting.  Claims in Class 4(i) are Impaired. Subject to the terms and conditions of this Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(i) are entitled to vote to accept or reject the Plan.

(ii)     Treatment.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(i) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(j)     Class 4(j) – Louisiana State Lease 5097 Claims

(i)     Impairment and Voting.  Claims in Class 4(j) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(j) are entitled to vote to accept or reject the Plan.

(ii)     Treatment.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(j) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(k)     Class 4(k) – Louisiana State Lease 16818 Claims

(i)     Impairment and Voting.  Claims in Class 4(k) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(k) are entitled to vote to accept or reject the Plan.

(ii)     Treatment.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(k) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(l)     Class 4(l) – Louisiana State Lease 16692 Claims

(i)     Impairment and Voting.  Claims in Class 4(l) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(l) are entitled to vote to accept or reject the Plan.

25

(ii)    _Treatment_.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(l) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(m)    Class 4(m) – Louisiana State Lease 4407 Claims

(i)    _Impairment and Voting_.  Claims in Class 4(m) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(m) are entitled to vote to accept or reject the Plan.

(ii)    _Treatment_.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(m) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(n)    Class 4(n) – Louisiana State Lease 4865 Claims

(i)    _Impairment and Voting_.  Claims in Class 4(n) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(n) are entitled to vote to accept or reject the Plan.

(ii)    _Treatment_.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(n) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(o)    Class 4(o) – Louisiana State Lease 19680 Claims

(i)    _Impairment and Voting_.  Claims in Class 4(o) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(o) are entitled to vote to accept or reject the Plan.

(ii)    _Treatment_.  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(o) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

26

(p)    Class 4(p) – Louisiana State Lease 16847 Claims

(i)    Impairment and Voting.    Claims in Class 4(p) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(p) are entitled to vote to accept or reject the Plan.

(ii)    Treatment.    Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(p) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(q)    Class 4(q) – Louisiana State Lease 335DP Claims

(i)    Impairment and Voting.    Claims in Class 4(q) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(q) are entitled to vote to accept or reject the Plan.

(ii)    Treatment.    Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(q) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(r)    Class 4(r) – Louisiana State Lease 16443 Claims

(i)    Impairment and Voting.    Claims in Class 4(r) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(r) are entitled to vote to accept or reject the Plan.

(ii)    Treatment.    Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(r) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(s)    Class 4(s) – Louisiana State Lease 17621 Claims

(i)    Impairment and Voting.    Claims in Class 4(s) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(s) are entitled to vote to accept or reject the Plan.

(ii)    Treatment. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(s) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(t)    Class 4(t) – Louisiana State Lease 18078 Claims

(i)    Impairment and Voting. Claims in Class 4(t) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(t) are entitled to vote to accept or reject the Plan.

(ii)    Treatment. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(t) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(u)    Class 4(u) – Plaquemines Parish Government Agency Lease Claims

(i)    Impairment and Voting. Claims in Class 4(u) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(u) are entitled to vote to accept or reject the Plan.

(ii)    Treatment. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(u) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(v)    Class 4(v) – Louisiana State Lease 1268 Claims

(i)    Impairment and Voting. Claims in Class 4(v) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(v) are entitled to vote to accept or reject the Plan.

(ii)    Treatment. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(v) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

28

(w)     Class 4(w) – Louisiana State Lease 15906 Claims

(i)     *Impairment and Voting.*  Claims in Class 4(w) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(w) are entitled to vote to accept or reject the Plan.

(ii)    *Treatment.*  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(w) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(x)     Class 4(x) – Louisiana State Lease 16393 Claims

(i)     *Impairment and Voting.*  Claims in Class 4(x) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(x) are entitled to vote to accept or reject the Plan.

(ii)    *Treatment.*  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(x) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(y)     Class 4(y) – Louisiana State Lease 16392 Claims

(i)     *Impairment and Voting.*  Claims in Class 4(y) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(y) are entitled to vote to accept or reject the Plan.

(ii)    *Treatment.*  Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(y) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(z)     Class 4(z) – Louisiana State Lease 16773 Claims

(i)     *Impairment and Voting.*  Claims in Class 4(z) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(z) are entitled to vote to accept or reject the Plan.

29

(ii)    <u>Treatment</u>. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(z) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(aa)    <u>Class 4(aa) – Louisiana State Lease 16570 Claims</u>

(i)    <u>Impairment and Voting</u>. Claims in Class 4(aa) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(aa) are entitled to vote to accept or reject the Plan.

(ii)    <u>Treatment</u>. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(aa) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

(bb)    <u>Class 4(bb) – Louisiana State Lease 16890 Claims</u>

(i)    <u>Impairment and Voting</u>. Claims in Class 4(bb) are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 4(bb) are entitled to vote to accept or reject the Plan.

(ii)    <u>Treatment</u>. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim in Class 4(bb) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, the Oil Well Lien Act Claim 90-Day Full Pay Option or the Oil Well Lien Act Claim Effective Date Pay Option.

Section 4.5    <u>**Class 5 – Other Secured Claims**</u>.

(a)    <u>Impairment and Voting</u>. Claims in Class 5 are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Secured Claims in Class 5 are entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed Secured Claim not in Class 2, 3, or 4(a) – 4(bb) in Cash, at the written election of such holder made on or prior to the Confirmation Hearing, (i) (x) ninety percent (90%) of the amount of the Allowed Secured Claim on the later of the Effective Date and the date the Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates)

30

and (y) ten percent (10%) of the amount of the Allowed Secured Claim ninety (90) days after the Effective Date plus interest at the Applicable Interest Rate for the Applicable Interest Period as provided by applicable Law plus the holder's Applicable Fees and Costs as provided by applicable Law that are Allowed; or (ii) one hundred percent (100%) of the Allowed Secured Claim on the later of the Effective Date and the date the Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates) plus the holder's Applicable Fees and Costs as provided by applicable Law that are Allowed plus interest on the Allowed Secured Claim for the Applicable Interest Period at the Federal Interest Rate.

Section 4.6    **Class 6 – General Unsecured Claims.**

(a)    Impairment and Voting. Claims in Class 6 are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Claims in Class 6 are entitled to vote to accept or reject the Plan.

(b)    Treatment. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed General Unsecured Claim in Cash, at the written election of such holder made at or prior to the Confirmation Hearing, (i) (x) ninety percent (90%) of the amount of the Allowed General Unsecured Claim on the later of the Effective Date and the date the General Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates) and (y) ten percent (10%) of the amount of the Allowed General Unsecured Claim ninety (90) days after the Effective Date plus interest on the Allowed General Unsecured Claim at the Applicable Interest Rate for the Applicable Interest Period as provided by applicable Law plus Applicable Fees and Costs as provided by applicable Law that are Allowed; or (ii) one hundred percent (100%) of the Allowed General Unsecured Claim on the later of the Effective Date and the date the General Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates) plus interest on the Allowed General Unsecured Claim for the Applicable Interest Period at the Federal Interest Rate.

Section 4.7    **Class 7 – State Lessor Audit Royalty Claims.**

(a)    Impairment and Voting. Claims in Class 7 are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Claims in Class 7 are entitled to vote to accept or reject the Plan.

(b)    Treatment. Unless otherwise agreed to by the Debtors or, after the Effective Date, the Reorganized Debtors and such holder, the Reorganized Debtors shall pay to each holder of an Allowed State Lessor Audit Royalty Claim in Cash, at the written election of such holder made at or prior to the Confirmation Hearing, (i) (x) ninety percent (90%) of the amount of the Allowed State Lessor Audit Royalty Claim on the later of the Effective Date and the date the State Lessor Audit Royalty Claim becomes an Allowed State Lessor Audit Royalty Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates) and (y) ten percent (10%) of the amount of the Allowed State

31

Lessor Audit Royalty Claim ninety (90) days after the Effective Date plus interest on the Allowed State Lessor Audit Royalty Claim at the Applicable Interest Rate for the Applicable Interest Period as provided by applicable Law plus Applicable Fees and Costs as provided by applicable Law that are Allowed; or (ii) one hundred percent (100%) of the Allowed State Lessor Audit Royalty Claim on the later of the Effective Date and the date the State Lessor Audit Royalty Claim becomes an Allowed State Lessor Audit Royalty Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates) plus interest on the Allowed State Lessor Audit Royalty Claim for the Applicable Interest Period at the Federal Interest Rate.

Section 4.8    **Class 8 – Management Note Claim**.

(a)    Impairment and Voting. Claims in Class 8 are Impaired. Subject to the terms and conditions of the Plan (including Article V and Article IX), the holders of Allowed Claims in Class 8 are entitled to vote to accept or reject the Plan.

(b)    Treatment. The Reorganized Debtors shall pay to each holder of an Allowed Management Note Claim as follows: for a period of sixty (60) months following the Effective Date, monthly payments of interest only on the Allowed Management Note Claim at the lesser of the interest rate provided for in the applicable Management Note and the interest rate provided for in Section 4.3, which payments shall be made in kind, with such interest to be compounded (or capitalized) annually, with the Allowed Management Note Claims to be payable in full in Cash, including all interest accrued thereupon, on the last Business Day of the 60th full month following the Effective Date; provided that the Allowed Claims of any and all other Classes of Claims herein shall have been paid in full as a precondition to payment of the Allowed Management Note Claims. Except as otherwise provided herein, the Reorganized Debtors agree to be bound by the terms of the Management Notes.

Section 4.9    **Class 9 – Non-Warrant Equity Interests**.

(a)    Impairment and Voting. Non-Warrant Equity Interests in Class 9 are Impaired. Subject to the terms and conditions of the Plan, the holders of Allowed Equity Interests in Class 9 are entitled to vote to accept or reject the Plan.

(b)    Treatment. Holders of Allowed Non-Warrant Equity Interests in Saratoga shall retain their Allowed Equity Interests, which shall be retained and shall automatically constitute identical Equity Interests in Reorganized Saratoga on the Effective Date; provided that holders of these Allowed Non-Warrant Equity Interests in Saratoga shall receive no dividend or distribution in respect of their Allowed Non-Warrant Equity Interests until all Allowed Claims are paid in Cash and in full in accordance with the terms of this Plan. Moreover, no Equity Interests of the Reorganized Debtors, including, without limitation, any new Equity Interests issued after the Effective Date, shall receive any distribution or dividend of any kind unless and until the Allowed Claims are paid in Cash and in full in accordance with the terms of this Plan.

32

Section 4.10    **Class 10 – Warrants**.

(a)    Impairment and Voting.  Warrants in Class 10 are Impaired.  Subject to the terms and conditions of the Plan, the holders of Allowed Equity Interests in Class 10 are entitled to vote to accept or reject the Plan.

(b)    Treatment.  Holders of Allowed Warrants in Saratoga shall retain their Allowed Equity Interests, which shall be retained and shall automatically constitute identical Equity Interests in Reorganized Saratoga on the Effective Date; provided that holders of these Allowed Warrants in Saratoga shall receive no distribution in respect of their Allowed Warrants or the Non-Warrant Equity Interests issuable upon the exercise of the Warrants until all Allowed Claims are paid in full in accordance with the terms of this Plan.  For the avoidance of doubt, Wayzata shall retain the Wayzata Warrant and its terms shall remain in full force and effect.

## ARTICLE V
## DISPUTED CLAIMS

Section 5.1    **Right to Object to Claims**.  Except to the extent a Claim is Allowed hereunder, the Debtors and, after the Effective Date, the Reorganized Debtors shall have the exclusive right to object to the allowance, amount, or classification of Claims and such objections may be litigated (including to Final Order) by the Debtors or Reorganized Debtors, as the case may be, or compromised and settled in accordance with their business judgment without further order of the Bankruptcy Court.

Section 5.2    **Deadline for Objecting to Claims**.  As soon as reasonably practicable, but in no event later than ninety (90) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court (which may be ordered upon ex parte motion of the Reorganized Debtors), all objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims.  An objection shall notify the holder of the Claim of the deadline for responding to such objection.

Section 5.3    **Deadline for Responding to Objections**.  Within thirty (30) days after service of an objection, any written response to the objection must be filed with the Bankruptcy Court by the holder of the objected-to Claim and must be served upon the Debtors or, after the Effective Date, the Reorganized Debtors and upon counsel to the Debtors or Reorganized Debtors, as the case may be.  Failure to file a written response by that date shall constitute a waiver and release of the subject Claim, and shall cause the Bankruptcy Court to enter a default judgment against the non-responding holder of the Claim granting the relief requested in the objection.

Section 5.4    **Estimation of Claims**.  The Debtors may request the Bankruptcy Court to estimate any contingent or Disputed Claim for purposes of allowance under section 502(c) of the Bankruptcy Code.

Section 5.5    **Payment of Disputed Claims**.  At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall distribute to the holder thereof the Distribution, if any, to which such holder is then entitled under the Plan.  The holder of a Disputed Claim that later becomes an Allowed Claim shall receive interest at the Applicable

33

Rate from the Effective Date (or such earlier or different date as is provided for herein) to the date of the Distribution in respect of the Allowed Claim. The Debtors or, after the Effective Date, the Reorganized Debtors may, but shall not be required to, make a Distribution with respect to the portion of a Disputed Claim that is not in dispute (if any) pending the resolution of the entire Claim.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 6.1 **Assumption and Rejection**. On the Effective Date, all executory contracts and unexpired leases that exist between any of the Debtors and any Entity shall be assumed, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date[1], (ii) is identified as an executory contract or unexpired lease to be rejected on the Effective Date on **Exhibit A**, as that Exhibit may be amended, restated, or supplemented prior to the commencement of the Confirmation Hearing, (iii) is separately addressed herein (including the Wayzata Credit Agreement), or (iv) has a different time period for assumption or rejection provided by order of the Bankruptcy Court or by agreement between the parties to such executory contract or unexpired lease. Specifically included within this assumption are all obligations of contractual indemnity in favor of predecessors in title created through contracts governing the transfer of oil and gas leases to the Debtors.

Section 6.2 **Approval of Assumption and Rejection**. Except as otherwise provided in the Disclosure Statement or in the Plan, entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption, assumption and assignment, or rejection of the executory contracts and unexpired leases, as the case may be, pursuant to this Article VI, and (ii) the extension of time pursuant to section 365(d)(4) of the Bankruptcy Code within which the Debtors may assume or reject the unexpired leases specified in this Article VI through the Confirmation Date.

Section 6.3 **Cure of Defaults**. All cure payments that may be required by section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease that is assumed under this Plan shall be made by the Debtors on the Effective Date or as soon as practicable thereafter. All requests for cure payments by a party to such assumed contract or lease must be filed pursuant to Section 2.1, unless such cure payments are agreed to by the Debtors or are otherwise determined by the Bankruptcy Court upon appropriate notice and hearing. In the event of a dispute regarding the amount of any cure payment, the ability of the Debtors to provide adequate assurance of future performance or any other matter pertaining to assumption, the Debtor shall make such cure payments required by section 365(b)(1) of the

---

[1] The Debtors have already assumed all of their oil and gas leases pursuant to the Order Granting Motion for Order Authorizing Debtors to Assume Oil and Gas Leases entered on June 23, 2009. The Debtors have also assumed two unexpired leases of non-residential real property pursuant to the Order Granting Debtors' Motion to Assume Leases of Non-Residential Real Property entered on July 31, 2009. Nothing in this Disclosure Statement or the Plan should be construed as an admission or as a position taken by the Debtors as to the applicability or non-applicability of 11 U.S.C. § 365 to oil and gas leases.

34

Bankruptcy Code following the later of the Effective Date (or as soon as practicable thereafter) and the date of the entry of a Final Order resolving such dispute.

Section 6.4 **Rejection Damage Claims.** Claims arising out of the rejection of an executory contact or unexpired lease pursuant to this Article VI must be filed with the Bankruptcy Court no later than thirty (30) days after entry of the Confirmation Order. Any such Claims not filed within such time will be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or any of their properties or agents, successors, or assigns. Unless otherwise order by the Bankruptcy Court, all Claims arising from the rejection of an executory contact or unexpired lease shall be treated as General Unsecured Claims.

## ARTICLE VII
## MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

Section 7.1 **Generally.** Upon Confirmation, the Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtors, and each of the officers thereof, are authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Section 7.2 **Directors and Officers.** On the Effective Date, the current officers, directors, and managers of the Debtors will continue to hold their respective positions with the Reorganized Debtors. Their compensation will continue at current levels unless and until the Compensation Committee (made up of independent directors) of Reorganized Saratoga's Board of Directors, acting in the ordinary course of business, changes those levels.

Section 7.3 **Causes of Action.**

(a) The Debtors and, after the Effective Date, the Reorganized Debtors, specifically reserve and shall have the exclusive right to bring, prosecute, waive, release, compromise, and settle as representatives of the Estates all Causes of Action, which are specifically retained under the terms of this Plan, subject to the liens and security interests in favor of Macquarie and the Wayzata Parties as provided for herein. The Debtors and, after the Effective Date, the Reorganized Debtors will pursue those Causes of Action that they, in the sole exercise of their business judgment and discretion, deem financially beneficial to the Estates. The recovery from all Causes of Action shall become Assets of the Debtors and, after the Effective Date, the Reorganized Debtors in accordance with this Plan. Further, the Debtors shall be entitled to offset such amounts as may be awarded to the Debtors or Reorganized Debtors with respect to such Causes of Action against Distributions due hereunder to the holder of a Claim, whether Disputed or Allowed; provided that no such offset shall occur, and no Distribution shall be delayed, unless, until, and only to the extent that the Cause of Action is reduced to judgment by appropriate Governmental Authority or as agreed by the parties. Subject to Section 7.3(b), Section 7.3(c) and Section 7.4, neither the allowance of a Claim against the Debtors nor the making of Distributions pursuant hereto to a holder of Claims will bar or limit the right of the Debtors or Reorganized Debtors to bring any Causes of Action held against the

35

holder of any Claim, even if the Claim that is Allowed or on account of which Distributions are made arises from the same agreement, transactions or occurrence from which the Causes of Action arise.

(b) Notwithstanding anything herein to the contrary, subject to the occurrence of and as of the Effective Date, the Debtors and the Reorganized Debtors shall retain *no* Causes of Action (including Bankruptcy Causes of Action) against Macquarie and upon the Effective Date any and all Causes of Action (including Bankruptcy Causes of Action) against Macquarie that may exist as of the Confirmation Date, whether or not asserted, known or unknown, shall, without any further action by Macquarie, the Debtors, or any other Entity, be fully and finally waived, released and extinguished, with prejudice.

(c) Notwithstanding anything herein to the contrary, subject to the occurrence of and as of the Effective Date, the Debtors and the Reorganized Debtors shall retain *no* Causes of Action (including Bankruptcy Causes of Action) against any of the Wayzata Parties and upon the Effective Date any and all Causes of Action (including Bankruptcy Causes of Action) against any of the Wayzata Parties that may exist as of the Effective Date, whether or not asserted, known or unknown, shall, without any further action by the Wayzata Parties, the Debtors, the Reorganized Debtors or any other Entity, be fully and finally waived, released and extinguished, with prejudice.

Section 7.4  **Mutual Release**.  NOTWITHSTANDING ANYTHING SET FORTH HEREIN TO THE CONTRARY, SUBJECT TO THE OCCURRENCE OF AND AS OF THE EFFECTIVE DATE, EACH OF THE RELEASED PARTIES SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED AND DISCHARGED THE OTHER RELEASED PARTIES AND ALL FORMER AND CURRENT OFFICERS, DIRECTORS, MANAGERS AND EMPLOYEES, AGENTS, ATTORNEYS, FINANCIAL ADVISORS, AND PROFESSIONALS OF THE RELEASED PARTIES (COLLECTIVELY, THE "RELEASED AGENTS") (BUT SOLELY IN SUCH CAPACITIES) OF AND FROM ANY CLAIM OR CAUSE OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, IDENTIFIED OR NOT IDENTIFIED ON EXHIBIT G TO THE DISCLOSURE STATEMENT OR HEREUNDER, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER ANY STATUTORY, COMMON OR OTHER FORM OF APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS, OMISSIONS, TRANSACTIONS OR OTHER EVENTS OCCURRING ON OR BEFORE THE EFFECTIVE DATE IN CONNECTION WITH, BASED UPON, RELATING TO OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART: THE DEBTORS; ANY PRIOR EXTENSION OF CREDIT TO THE DEBTORS; ANY PRIOR INVOLVEMENT OR NON-INVOLVEMENT WITH ANY POTENTIAL EXTENSION OF CREDIT TO THE DEBTORS; THE DEBTORS' RESTRUCTURING; THE BANKRUPTCY CASES; THE NEGOTIATION OF ANY SETTLEMENT OR AGREEMENT IN THE BANKRUPTCY CASES; THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF ANY OF THE DEBTORS; THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS PLAN; THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY RELATING TO THE ESTABLISHMENT OR

RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE BANKRUPTCY CASES; THE NEGOTIATION, FORMULATION, PREPARATION OR DISTRIBUTION OF THIS PLAN AND THE DISCLOSURE STATEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS; OR THE PURSUIT OF CONFIRMATION OF THIS PLAN (OTHER THAN THE RIGHTS TO ENFORCE THIS PLAN AND THE PLAN DOCUMENTS), AND THE RELEASED PARTIES' COVENANT NOT TO SUE ANY OF THE OTHER RELEASED PARTIES AND/OR THE RELEASED AGENTS WITH RESPECT TO THE CLAIMS AND CAUSES OF ACTION RELEASED HEREIN (ALL OF THE FOREGOING BEING HEREIN CALLED THE "RELEASED CLAIMS"); PROVIDED, HOWEVER, THAT NO RELEASED PARTIES SHALL BE RELEASED AND DISCHARGED FROM (AND THE RELEASED CLAIMS SHALL EXPRESSLY NOT INCLUDE) OBLIGATIONS UNDER THIS PLAN, THE PLAN DOCUMENTS, THE WAYZATA SECURED CREDIT DOCUMENTS, THE WAYZATA UNSECURED CREDIT DOCUMENTS, THE WAYZATA NEW WARRANT, THE WAYZATA WARRANT, OR THE MACQUARIE AMENDED CREDIT AGREEMENT. EACH OF THE RELEASED PARTIES REPRESENTS AND WARRANTS THAT: EACH SUCH RELEASED PARTY HAS NOT TRANSFERRED, PLEDGED OR OTHERWISE ASSIGNED TO ANY OTHER PERSON OR ENTITY ALL OR ANY PORTION OF ANY CLAIM RELEASED UNDER THIS SECTION 7.4; OR ANY RIGHTS OR ENTITLEMENTS WITH RESPECT THERETO; AND THE EFFECTUATION OF THIS RELEASE DOES NOT VIOLATE OR CONFLICT WITH THE TERMS OF ANY CONTRACT TO WHICH SUCH RELEASED PARTY IS A PARTY OR BY WHICH SUCH RELEASED PARTY OTHERWISE IS BOUND. WITHOUT LIMITING THE FOREGOING, THE CONFIRMATION ORDER SHALL CONSTITUTE A FINDING AND ORDER PROVIDING THAT ANY CAUSES OF ACTIONS ARISING UNDER, OR IN ANY WAY RELATED TO, THE MACQUARIE RELEASED PARTIES, THE MACQUARIE RELEASED AGENTS, THE WAYZATA RELEASED PARTIES, THE WAYZATA RELEASED AGENTS AND/OR THE WAYZATA CREDIT AGREEMENT ARE PROPERTY OF THE DEBTORS' ESTATES, AND BY THE TERMS OF THE RELEASE CONTAINED WITHIN THIS SECTION 7.4 SUCH CAUSES OF ACTION, IF ANY, ARE BARRED FROM BEING ASSERTED IN ANY MANNER BY THE DEBTORS, THE REORGANIZED DEBTORS, THE HOLDERS OF CLAIMS AGAINST THE DEBTORS, OR THE CURRENT OR FORMER HOLDERS OF EQUITY INTERESTS IN THE DEBTORS. FOR THE AVOIDANCE OF DOUBT, CAUSES OF ACTION AGAINST THE MACQUARIE RELEASED PARTIES, THE MACQUARIE RELEASED AGENTS, THE WAYZATA RELEASED PARTIES AND THE WAYZATA RELEASED AGENTS AS SPECIFIED ABOVE, IF ANY, ARE BEING RELEASED BY THE DEBTOR RELEASED PARTIES PURSUANT TO THIS PARAGRAPH AND SUCH CAUSES OF ACTION ARE NOT RETAINED BY, OR CONVEYED TO, ANY PARTY PURSUANT TO THIS PLAN OR ANY PLAN DOCUMENT.

Section 7.5 **Distributions**. All Distributions required under the Plan to holders of Allowed Claims shall be made by the Reorganized Debtors on the Effective Date, except as otherwise provided herein, from Cash on hand and/or income generated through operations. From and after the Confirmation Date, costs and expenses shall be paid in the ordinary course of business.

Section 7.6  **Governmental Authority Defaults**.  If the Reorganized Debtors should substantially default on the payments to the Louisiana Department of Revenue or payments of a Tax due the United States, acting through the Internal Revenue Service, pursuant to the terms of the Plan, then that shall constitute a default. The Louisiana Department of Revenue or the United States, acting through the Internal Revenue Service, as the case may be, shall give the Reorganized Debtors written notice thereof pursuant to the terms hereof, and the Reorganized Debtors may cure such default within twenty (20) days from the receipt of such notice.  If the Reorganized Debtors fail to cure a default within twenty (20) days after receipt of written notice of default, then the Louisiana Department Revenue or the United States, acting through the Internal Revenue Service, as the case may be, may (a) enforce the entire amount of its Allowed Claim; (b) exercise any and all rights and remedies allowed under applicable Law; and/or (c) seek such relief as may be appropriate in the Bankruptcy Court.

## ARTICLE VIII
## DISTRIBUTIONS

Section 8.1  **Distributions of Cash**.  Any Distribution of Cash made pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank; provided that payment to foreign holders of Allowed Claims may be in such funds and by such means (as determined by the Debtors or, after the Effective Date, the Reorganized Debtors in their sole discretion) as are customary or necessary in a particular foreign jurisdiction.

Section 8.2  **Timing of Distributions**.  Any Distribution to be made under the Plan on a day other than a Business Day shall be due on the next succeeding Business Day.  If a Claim or portion thereof has not been Allowed at the time a Distribution in respect of that Claim or portion would be due under the Plan, then, subject to Section 5.5, that Distribution shall not occur at that time and shall instead occur within ten (10) Business Days of the Claim or portion becoming Allowed; provided that, if a portion of the Claim has been Allowed at the time a Distribution is due, then, in accordance with Section 5.5, the Distribution in respect of the Allowed portion may be made in accordance with the terms of the Plan.

Section 8.3  **Record Date for Voting on Plan**.  The transfer registers for each of the Classes of Claims and Interests as maintained by the Debtors or any third party shall be deemed closed on the date of entry of an order of the Bankruptcy Court approving the Disclosure Statement (or, with respect to any Class, any later date to which the Debtors agree in their sole discretion) for purposes of voting on the Plan, and there shall be no further changes to reflect any new record holders of any Claims or Equity Interests for purposes of voting on the Plan.

Section 8.4  **Minimum Distributions: No Fractional Distributions: No Interest**.  No Distribution of Cash less than One Hundred Dollars ($100.00) is required to be made to any holder of an Allowed Claim unless a request therefore is made in writing to the Debtors or, after the Effective Date, the Reorganized Debtors.  No Distribution of fractional dollars is required; Distributions shall be rounded up or down to the nearest whole dollar.  Except as otherwise expressly provided herein, no holder of any Allowed Claim shall be entitled to any post-Petition Date interest on such Claim.

38

Section 8.5 **Delivery of Distributions**. Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed by the Debtors with the Bankruptcy Court, unless superseded by the address as set forth on proofs of claim filed by such holders or other writing notifying Debtors or, after the Effective Date, the Reorganized Debtors of a change of address (or at the last known address of such a holder if no proof of claim is filed or if the Debtors and Reorganized Debtors have not been notified in writing of a change of address).

Section 8.6 **Undeliverable Distributions**. If any Distribution to a holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made, unless and until the Debtors or, after the Effective Date, the Reorganized Debtors are notified of such holder's then current address, at which time all missed Distributions shall be made to such holder. All Claims for undeliverable Distributions shall be made on or before the later of the first (1st) anniversary of the Effective Date and the date ninety (90) days after such Claim is Allowed. After such date, all property held for Distribution to any holder of an Allowed Claim shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtors, and the Claim of any holder with respect to such property shall be discharged and forever barred.

Section 8.7 **Withholding**. The Debtors or, after the Effective Date, the Reorganized Debtors may at any time withhold from any Distribution to any holder of an Allowed Claim (except the Internal Revenue Service) such amounts sufficient to pay any Tax or other charge that has been or may be imposed on such holder with respect to the amount distributable or to be distributed under the income Tax laws of the United States or of any other Governmental Authority by reason of any Distribution provided for in the Plan, whenever such withholding is determined by the Debtors or, after the Effective Date, the Reorganized Debtors and in their sole discretion, to be required by any Law. The Debtors or, after the Effective Date, the Reorganized Debtors in the exercise of their sole discretion may enter into agreements with taxing or other Governmental Authorities for the payment of such amounts that may be withheld in accordance with the provisions of this Section 8.7. Notwithstanding the foregoing but without prejudice to any rights of the Debtors or, after the Effective Date, the Reorganized Debtors, such holder of an Allowed Claim shall have the right with respect to the United States, or any other Governmental Authority, to contest the imposition of any tax or other charge by reason of any Distribution under the Plan.

Section 8.8 **Time Bar to Cash Payments**. Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Debtors or, after the Effective Date, the Reorganized Debtors by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of the first (1st) anniversary of the Effective Date and the date ninety (90) days after such Claim is Allowed, and the failure timely to make any such claim shall result in such Claim being forever barred and discharged.

Section 8.9 **Existing Securities and Agreements**. Each holder of a debenture, promissory note, pledge agreement, guarantee, mortgage, financing statement, share certificate, or other instrument evidencing a Claim, a Lien related thereto, or an Equity Interest receiving a

39

Distribution under the Plan, except as otherwise provided in the Disclosure Statement or the Plan (including in Section 4.3), may be required by the Debtors or, after the Effective Date, the Reorganized Debtors, in their sole discretion, to surrender such document and/or to execute such other documents as the Debtors or, after the Effective Date, the Reorganized Debtors, in their sole discretion, may require to evidence the satisfaction and discharge of the Claim, Lien, or Equity Interest. No Distribution hereunder is required to be made to or on behalf of any such holders unless and until such documents are received by the Debtors or, after the Effective Date, the Reorganized Debtors or the unavailability of such documents is established to the reasonable satisfaction of the Debtors or, after the Effective Date, the Reorganized Debtors. The Debtors or, after the Effective Date, the Reorganized Debtors may require any Entity delivering an affidavit of loss and indemnity to furnish a bond in form and substance (including with respect to amount) reasonably satisfactory to the Debtors or, after the Effective Date, the Reorganized Debtors. Any holder shall be deemed to have forfeited all rights, Claims, and Equity Interests and shall not participate in any Distribution hereunder if that holder fails, within sixty (60) days after being notified of the request to surrender, (i) to surrender or cause to be surrendered such debenture, promissory note, pledge agreement, guarantee, mortgage, financing statement, share certificate, or other instrument, (ii) to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Debtors or, after the Effective Date, the Reorganized Debtors, (iii) if requested, to furnish a bond reasonably satisfactory to the Debtor, and (iv) if requested, to execute and deliver additional documents to evidence the satisfaction and discharge of the Claim, Lien, or Equity Interest; provided that the Debtors or, after the Effective Date, the Reorganized Debtors shall provide notice to the Unsecured Creditors' Committee or the Equity Holders' Committee, as appropriate, if such entities are extant, of the failure of any holder to comply with this Section 8.9 and shall provide the appropriate entity with a reasonable period of time (not to exceed ten (10) Business Days) in which to contact such holder and attempt to secure appropriate performance by such holder.

Section 8.10 **Oil Well Lien Act Claim Releases.** Prior to the occurrence of the first Distribution under this Plan in respect of an Oil Well Lien Act Claim, the holder of that Oil Well Lien Act Claim shall execute and deliver to the Debtors a release of any Lien under the Oil Well Lien Act against the Debtors, their Assets, and the Estates, which release shall by its terms be effective upon the occurrence of the last Distribution due under this Plan in respect of that Oil Well Lien Act Claim. Upon the occurrence of the last Distribution due under this Plan in respect of that Oil Well Lien Act Claim, all such Liens filed against any Debtor shall have been released, discharged, and erased and made of no force and effect against the Debtors, their Assets, and the Estates. The form of release is attached hereto as **Exhibit B.** The Debtors reserve the right at any time before the Effective Date to amend, restate, or supplement **Exhibit B.**

Section 8.11 **Tax Identification Number Affidavit.** Upon request, the Debtors shall be entitled to obtain the appropriate form and/or affidavit, in a form acceptable to them in their reasonable discretion, from each Entity that is to receive a Distribution under this Plan as to that Entity's federal tax identification number; provided that, if the Debtors have requested such a form or affidavit from an Entity, then no Distribution to that Entity shall occur unless and until the Debtors receive such form or affidavit.

40

# ARTICLE IX
## ACCEPTANCE OR REJECTION OF THE PLAN

Section 9.1 **Classes Entitled to Vote.** Each holder of an Allowed Claim or an Allowed Equity Interest in a Class of Claims or Equity Interests against the Debtor that may be impaired and is to receive a Distribution under the Plan, including any holder of an Allowed Claim in Classes 2, 3, 4, 5, 6, 7, or 8 or an Allowed Equity Interest in Classes 9 or 10, shall be entitled to vote separately to accept or reject the Plan. Each holder of a Claim in a Class of Claims or Equity Interests that is Unimpaired under the Plan, such as Class 1, shall be deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. When casting a vote to accept or reject the Plan, if a holder of an Allowed Claim in Classes 4, 5, 6, or 7 fails to elect which treatment the holder's Allowed Claim will receive under Section 4.4, Section 4.5, Section 4.6, or Section 4.7, respectively, then the Debtors shall use reasonable efforts to contact the holder so that the holder can elect in writing which treatment to receive prior to the Confirmation Hearing; provided that, if any holder of an Allowed Claim in Classes 4, 5, 6, or 7 has not elected a treatment in writing prior to the Confirmation Hearing, then the holder's Allowed Claim shall receive treatment as follows: (a) for Allowed Oil Well Lien Act Claims, the Oil Well Lien Act Claim 90-Day Full Pay Option; (b) for Allowed Other Secured Claims, treatment pursuant to Section 4.5(b)(i); (c) for Allowed General Unsecured Claims, treatment pursuant to Section 4.6(b)(i); and (d) for State Lessor Audit Royalty Claims, treatment pursuant to Section 4.7(b)(i).

Section 9.2 **Class Acceptance Requirement.** An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Equity Interests shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan. For purposes of calculating the number of Allowed Claims in a class of Claims held by holders of Allowed Claims in such class that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such class held by one entity or any Affiliate shall be aggregated and treated as one Allowed Claim in such class.

Section 9.3 **Cramdown.** In the event that any impaired Class of Claims shall not accept the Plan or be deemed not to have accepted the Plan, the Debtor as proponent of the Plan reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan to provide treatment sufficient to assure that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Class(es) not accepting the Plan or being deemed not to have accepted the Plan, and, in particular, the treatment necessary to meet the requirements of sections 1129(a) and (b) of the Bankruptcy Code with respect to the rejecting Class(es) and any other Class(es) affected by such modifications.

41

## ARTICLE X
## EFFECT OF CONFIRMATION OF PLAN

Section 10.1  **Vesting of Assets**.  On the Effective Date, except as otherwise provided herein (including in Section 4.2, Section 4.3, Section 7.3(b), Section 7.3(c), and Section 7.4), all Assets of the Estates, including all Causes of Action, shall be transferred to, and shall vest in, the Reorganized Debtors, free and clear of all Liens and Claims, subject to the terms and conditions set forth herein.  THIS SECTION, TOGETHER WITH OTHER PROVISIONS IN THE PLAN, ARE INTENDED TO OPERATE TO SPECIFICALLY AND UNEQUIVOCALLY DISCLOSE AND ADVISE INTERESTED PARTIES THAT (EXCEPT AS OTHERWISE PROVIDED HEREIN) ALL CAUSES OF ACTION WILL BE PRESERVED AND PROSECUTED AFTER THE EFFECTIVE DATE.

Section 10.2  **Amended Organizational Documents of Reorganized Debtors**.  On the Effective Date, the Amended Organizational Documents attached hereto as **Exhibit C** shall become effective and, as appropriate, be filed with the appropriate Governmental Authorities. The Debtors reserve the right at any time before the Effective Date to amend, restate, or supplement **Exhibit C.**

Section 10.3  **Wayzata Secured Credit Documents and Wayzata Unsecured Credit Documents**.  On the Effective Date, the Wayzata Secured Credit Documents and Wayzata Unsecured Credit Documents shall become effective and be enforceable in accordance with their respective terms (including being enforceable against any agent and all lenders).

Section 10.4  **Amendment to Macquarie Credit Agreement**.  On the Effective Date, the Macquarie Amended Credit Agreement, at the sole discretion of Macquarie, shall become effective and be enforceable in accordance with its terms.

Section 10.5  **Operation by Reorganized Debtors**.  After the Effective Date, the Reorganized Debtors may operate their businesses, and may use, acquire, and dispose of Assets free of any restrictions imposed under the Bankruptcy Code.

Section 10.6  **Injunction**.  As and to the extent not inconsistent with sections 524 and 1141 of the Bankruptcy Code, and except as otherwise expressly provided in the Plan (including in Section 4.2 and Section 4.3), all Entities who have held, hold, or may hold Claims against, or Equity Interests in, the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or the Reorganized Debtors on account of any such Claim or Equity Interest; (c) creating, perfecting or enforcing any Lien against the Debtors or Reorganized Debtors, or against any of their Assets, on account of any such Claim or Equity Interest; and (d) asserting any right of setoff, subrogation or recoupment of any kind (except under section 362(b)(26) of the Bankruptcy Code as provided in section 553 of the Bankruptcy Code) against any obligation due from the Debtors or Reorganized Debtors or against the Assets of the Debtors or Reorganized Debtors on account of any such Claim or Interest.

42

Section 10.7 **Indemnification Obligations**. The obligations of the Debtors to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtors shall be recognized and honored and shall bind the Reorganized Debtors and shall not be affected by or discharged by this Plan. Nothing in this Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

Section 10.8 **Discharge of Debtors and Claims**. Except as otherwise provided in the Plan (including in Section 4.2, Section 4.3, Section 7.3(b), Section 7.3(c), and Section 7.4), the rights afforded herein and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of every nature, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or the Reorganized Debtors, or any of their Assets. As and to the extent not inconsistent with sections 524 and 1141 of the Bankruptcy Code, and except as otherwise provided herein (including in Section 4.2, Section 4.3, Section 7.3(b), Section 7.3(c), and Section 7.4), subject to the occurrence of and as of the Effective Date (i) all such Claims against, and all Equity Interests in, the Debtors shall be satisfied, discharged, and released in full and (ii) all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtors to the extent the Claims are satisfied in full, their Assets, or any other or further Claims or Equity Interests based upon any act or omission, transaction, or other activity of any kind or nature, whether known or unknown, that occurred prior to the Effective Date, whether or not (a) a proof of claim or interest based upon such Claim or Equity Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim or Equity Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim or Equity Interest has accepted the Plan; provided that the discharge shall not apply to Reorganized Debtors' obligations under this Plan or any Plan Document or the Debtors' contingent liability (if any) for plugging, abandonment, and/or reclaiming wells, facilities, and pipelines, whether such liabilities are direct or arise through contractual indemnity obligations; provided, further, that the discharge shall not apply to the Equity Interests in the Harvest Companies or the Lobo Companies. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor.

Section 10.9 **No Successor Liability**. Except as otherwise specifically provided in this Plan (including in Section 4.2, Section 4.3, Section 7.3(b), Section 7.3(c), and Section 7.4) or the Confirmation Order, neither the Debtors nor the Reorganized Debtors will have any responsibilities, pursuant to this Plan or otherwise, for any liabilities or obligations of the Debtors or any of the Debtors' past or present Affiliates relating to or arising out of the operations of or Assets of the Debtors or any of the Debtors' past or present Affiliates, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. Except as otherwise specifically provided in this Plan (including in Section 4.2, Section 4.3, Section 7.3(b), Section 7.3(c) and Section 7.4), the Reorganized Debtors shall have no successor or transferee liability of any kind or character, for any Claims; provided that the Reorganized Debtors shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in this Plan and the Plan Documents.

43

Section 10.10 **Exculpations**. As and to the extent not inconsistent with section 524(e) of the Bankruptcy Code and with 26 U.S.C. § 6672, each of the officers, directors, managers, members, and professionals of the Debtors, Macquarie, the Wayzata Parties, the Unsecured Creditors' Committee, and the Equity Holders' Committee shall have no liability to any holder of a Claim or Equity Interest or other Entity (including the foregoing Entities) for any act, event, or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the negotiation of the Plan, the Consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for any liability based on willful misconduct or gross negligence. In all such instances, the above-referenced parties shall be and have been entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities in connection with the Bankruptcy Cases and under the Plan. Such exculpation shall not extend to any post-Petition Date act of any Entity other than in connection with that Entity's official capacity in the Bankruptcy Cases.

Section 10.11 **Term of Injunction or Stays**. Unless otherwise provided herein or otherwise ordered by the Bankruptcy Court, all injunctions or stays set forth in 11 U.S.C. §§ 105 and 362 shall remain in full force and effect until the Effective Date rather than the Confirmation Date; provided that the Internal Revenue Service shall be permitted to commence and prosecute administrative collection actions for post-Confirmation Date debts beginning on the date that payments to the Internal Revenue Service under Section 2.3(a) begin. Nothing in this Section 10.11, however, shall be construed as a limitation of the permanent discharge and injunction provisions provided for in this Plan.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

Section 11.1 **Conditions**. The occurrence of the Effective Date is subject to satisfaction or waiver by the Debtors (subject to the written consent of Macquarie and Wayzata) of the following conditions precedent:

(a) Confirmation Order. The Confirmation Order (in form and substance acceptable to the Debtors, Macquarie and Wayzata) shall have been entered by the Bankruptcy Court and shall have become a Final Order and be in full force and effect.

(b) Amended Macquarie Credit Agreement. The Macquarie Credit Agreement shall have been replaced by the Macquarie Amended Credit Agreement by and among Reorganized Saratoga, Macquarie, and other appropriate Entities, and such other related agreements and documents as are necessary or appropriate in the reasonable judgment of the Debtors and Macquarie to give effect to the agreed-upon amendment to the Macquarie Credit Agreement, and these documents shall have been executed and delivered by all parties thereto. The Macquarie Amended Credit Agreement and the other agreements and documents shall include the terms and conditions set forth in Section 4.2(b), as appropriate, in the sole discretion of Macquarie, and as the parties thereto may agree on. The final documentation and related agreements, including the agreed-upon amendment to the Macquarie Credit Agreement, contemplated under this Section shall be subject to the approval of Macquarie in its sole discretion, and the Debtors.

44

(c)     <u>Wayzata Documents</u>.  The Wayzata Secured Credit Documents, the Wayzata Unsecured Credit Documents and the Wayzata New Warrant (i) shall include the terms and conditions set forth in Section 4.3(c), as appropriate, (ii) shall be in form and substance acceptable to the Debtors and Wayzata, and (iii) shall have been executed and delivered by all parties thereto.

(d)     <u>Intercreditor Agreement</u>.  Wayzata shall have elected to execute and deliver a written consent and amendment to the Intercreditor Agreement pursuant to which Wayzata consents to an increase in the Commitment and the Borrowing Base (each as defined in the Macquarie Credit Agreement) to $45,000,000.  Such amendment shall be in form and substance acceptable to Macquarie and Wayzata.  For avoidance of doubt, Wayzata's written consent may or may not be given in Wayzata's sole and absolute discretion and such consent shall not be implied or deemed given by confirmation of this Plan or by any vote by any Wayzata Party in favor of this Plan.

(e)     <u>Wayzata Payment</u>.  Wayzata shall have received a payment in the amount of $14,000,000 as provided in Section 4.3(c)(i).

(f)     <u>Governmental Authorizations</u>.  Any authorizations, consents and regulatory approvals from a Governmental Authority required for the consummation of each of the transactions contemplated in this Plan shall have been obtained and shall have become final and nonappealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

(g)     <u>Execution of Documents; Other Actions</u>.  All other actions and documents necessary to implement the Plan shall have been effected or executed.

Section 11.2     <u>**Effective Date**</u>.  If the Effective Date does not occur by December 31, 2009, unless extended by the written agreement of the Debtors, Macquarie and Wayzata (which agreement shall be Filed with the Bankruptcy Court), the Confirmation Order shall be vacated and all parties shall be in the same position as they were prior to entry of the Confirmation Order including as provided in Section 4.3(c)(ix).

Section 11.3     <u>**Substantial Consummation**</u>.  Notwithstanding the occurrence of the Effective Date, the Plan shall not have been (or deemed to have been) substantially consummated until all payments contemplated to be made under the Plan on the Effective Date have been made.

Section 11.4     <u>**Notice of Effective Date**</u>.  The occurrence of the Effective Date shall be evidenced by a Notice of Effective Date Filed with the Bankruptcy Court by the Reorganized Debtors within two (2) Business Days of the occurrence thereof.

Section 11.5     <u>**Revocation of Confirmation Order or Withdrawal of Plan**</u>.  The Debtors may revoke or withdraw this Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Bankruptcy Cases.  If this Plan is withdrawn prior to the Confirmation Date, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been issued but not entered on the docket) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court.  In such event, the Plan and the

45

Confirmation Order shall be of no further force or effect; the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of this Plan; all the Debtors' respective obligations with respect to the Claims and Equity Interests shall remain unchanged; and all of the Debtors' rights and claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtors or any other persons or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors or any other Entities.

**ARTICLE XII**
**RETENTION OF JURISDICTION**

Section 12.1 **Retention of Jurisdiction**. To the maximum extent permitted by the Bankruptcy Code or other applicable Law, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Bankruptcy Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following nonexclusive purposes:

    (a)    To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution and confirmation of this Plan;

    (b)    To determine the allowance or classification of Claims or Equity Interests (including the Applicable Interest Rate, the Applicable Interest Period, and Applicable Fees and Costs) and to determine any objections thereto;

    (c)    To determine rights to Distribution pursuant to this Plan;

    (d)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

    (e)    To determine any and all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date;

    (f)    To hear and determine any objection to Administrative Expense Claims or Claims;

    (g)    To hear and determine any Causes of Action brought or continued by the Debtors to the maximum extent permitted under applicable Law;

    (h)    To hear and determine motions of the Reorganized Debtors seeking the examination of any Entity pursuant to Bankruptcy Rule 2004, for purposes including investigations of potential Causes of Action, to the same extent the Debtors were entitled to seek such examinations prior to the Effective Date;

    (i)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

46

(j)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(k)     To hear and determine matters concerning any release, exculpation, or discharge and to enforce the injunctions set forth in the Plan;

(l)     To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(m)     To hear and determine all Fee Applications;

(n)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any transactions, documents, or agreements contemplated by the Plan;

(o)     To hear and determine all questions and disputes regarding title to, and any action to recover any of, the Assets or property of the Debtors or their Estates, wherever located;

(p)     To hear and determine matters concerning state, local, and Federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(q)     To consider and act on the compromise and settlement of any claim against the Debtors or their Estates;

(r)     To hear any other matter not inconsistent with the Bankruptcy Code; provided that, with respect to consideration issued to parties in interest under the Plan, the Bankruptcy Court shall have no further jurisdiction; and

(s)     To enter a Final Decree closing the Bankruptcy Cases.

## ARTICLE XIII
## MISCELLANEOUS

Section 13.1     **Defects, Omissions, Amendments, and Modifications of the Plan.**

(a)     The Debtors may, with the approval of the Bankruptcy Court and without notice to holders of Claims, insofar as it does not materially and adversely affect holders of Claims, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan.

(b)     The Debtors (with the prior written consent of Macquarie and Wayzata) may propose amendments or alterations to the Plan before or after Confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code.

47

(c)    The Debtors (with the prior written consent of Macquarie and Wayzata) may propose amendments or alterations to the Plan before or after the Confirmation Date but prior to substantial consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect holders of Claims, so long as (i) the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, (ii) the Debtors have complied with section 1125 of the Bankruptcy Code, and, (iii) after notice and hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

Section 13.2    **Severability.**    If the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void, or unenforceable, such provision shall be invalid, void, or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void, or unenforceable, and, notwithstanding the invalidity, voidness, or unenforceability of such provision, the Debtors may proceed to seek confirmation of the Plan without such invalid, void, or unenforceable provision; provided that the Debtors first obtain the prior written consent of Macquarie and Wayzata, in which case, the invalidity, voidness, or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

Section 13.3    **Dissolution of Committees.**    On the Effective Date, the Unsecured Creditors' Committee and its Professionals and the Equity Holders' Committee and its Professionals shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Bankruptcy Cases, and the Unsecured Creditors' Committee and the Equity Holders' Committee shall be deemed dissolved; provided that, in the event that the Effective Date occurs prior to the entry of an order with respect to final fee applications of Professionals for the Unsecured Creditors' Committee or the Equity Holders' Committee, the Unsecured Creditors' Committee and the Equity Holders' Committee and their Professionals may seek and recover reasonable compensation in connection with the preparation, filing and prosecution of such applications; provided, further, that if a motion for rehearing or appeal of the Confirmation Order is pending on the Effective Date, then the Unsecured Creditors' Committee and the Equity Holders' Committee shall not dissolve until that motion or appeal is resolved.

Section 13.4    **Exemption from Securities Laws.**    Both the issuance of the Wayzata New Warrant and the retention of the Allowed Non-Warrant Equity Interests and Allowed Warrant Equity Interests in Saratoga and their constitution of identical Equity Interests in Reorganized Saratoga shall be exempt from registration under any federal, state or local Law pursuant to section 1145 of the Bankruptcy Code or other applicable Law. Any person who solicits or participates in the offer, issuance, sale or purchase of Wayzata New Warrant issued under this Plan or the Equity Interests in Reorganized Saratoga converted under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, is not liable, on account of such solicitation or participation, for violation of an applicable Law governing solicitation of acceptance or rejection of this Plan or the offer, issuance, sale or purchase of securities pursuant thereto.

48

Section 13.5 **Successors and Assigns**. The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Entity.

Section 13.6 **Notices**. Any notice required or permitted to be provided under the Plan shall be in writing and served by either (i) certified mail, return receipt requested (or, for the United States, first class mail), postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, addressed as follows:

If to the Debtors or Reorganized Debtors:
Saratoga Resources, Inc.
Attention: Debtors/Reorganized Debtors
67201 Industry Lane
Covington, Louisiana 70433

and
Saratoga Resources, Inc.
Attention: Debtors/Reorganized Debtors
7500 San Felipe
Suite 675
Houston, Texas 77063


With copies, which shall not constitute notice, to:
Adams and Reese LLP
Attention: Robin B. Cheatham and John M. Duck
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234

and to:
Schully, Roberts, Slattery & Marino,
  A Professional Law Corporation
Attention: Paul J. Goodwine
1100 Poydras Street, Suite 1800
New Orleans, Louisiana 70163
Telephone:  (504) 585-7800


If to the Unsecured Creditors' Committee:
Taylor, Porter, Brooks & Phillips, LLP
Attention: Michael A. Crawford
451 Florida Street, 8th Floor (70801)
P.O. Box 2471
Baton Rouge, Louisiana 70821
Telephone: (225) 387-3221

49

If to the Equity Holders' Committee:
Heller, Draper, Hayden, Patrick & Horn, LLC
Attention: Douglas S. Draper
605 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: (504) 299-3300

Section 13.7   **Payment of Statutory Fees**. Except as otherwise provided herein, for so long as the Bankruptcy Cases shall remain open and pending before the Bankruptcy Court, all fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Debtors, with all such fees determined by the Bankruptcy Court at the Confirmation Hearing to be due on or prior to the Effective Date being paid in Cash by the Reorganized Debtors on the Effective Date.

Section 13.8   **Additional Documents**. On or before substantial consummation of the Plan, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to reasonably effectuate and further evidence the terms and conditions of the Plan.

DATED: November 25, 2009

Respectfully submitted:

**ADAMS AND REESE, LLP**

By:    _/s/ John M. Duck_
ROBIN B. CHEATHAM [#4004]
JOHN M. DUCK [#5104]
LISA M. HEDRICK [#26421]
DAVID K. BOWSHER [AL # ASB-1703-D56B]
JOHN A. LEE [TX #12125400]
JOANN J. COURCELLE [#26941]
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
Attorneys for the Debtors

PAUL J. GOODWINE [#23757]
Schully, Roberts, Slattery & Marino,
A Professional Law Corporation
1100 Poydras Street, Suite 1800
New Orleans, Louisiana 70163
Telephone: (504) 585-7800
Facsimile: (504) 585-7890
Special Counsel for the Debtors

50

# EXHIBIT A

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED

None.

A-1

# EXHIBIT B

## FORM OF OIL WELL LIEN ACT RELEASE

B-1

Property:_____
Amount _____
Claimant:_____


STATE OF _____            §
                                      §
PARISH/COUNTY OF _____     §

### Release of Lien and Privilege

**BEFORE ME**, the undersigned authority, a Notary Public in and for the jurisdiction noted above, and in the presence of the undersigned competent witnesses, came and appeared, as Affiant,

_____

who, being first duly sworn, did depose and state:

1.     That he/she is the _____, a duly authorized representative of _____ ("Claimant"), whose address for purposes hereof is _____, and that he/she is authorized to make and cause to be filed this Release of Lien and Privilege filed against _____ ("Harvest"), whose address for purposes hereof is 67201 Industry Lane, Covington, Louisiana 70433.

2.     That Claimant provided labor and/or materials (the "Work") to Harvest for the benefit of the property described in the Lien attached as Exhibit 1.  To secure payment for the Work, Claimant filed in the mortgage records of the Parish of _____, State of Louisiana, a lien and/or statement of privilege (the "Lien"), recorded at _____, in the principal amount of $_____.  A copy of the Lien is attached hereto as Exhibit 1, which includes a description of the property affected by the Lien and this Release of Lien and Privilege.

3.    That Claimant, for and in consideration of payment in the amount of $_____$, the sufficiency of which is hereby acknowledged, and the receipt of which shall have occurred prior to the recording of this Release of Lien and Privilege, does hereby RELEASE AND DISCHARGE Harvest from any and all liens and encumbrances of any kind arising from the Work, including, but not limited to, the principal amount owed as identified in the Lien and all interest and attorneys' fees related thereto.

4.    That Claimant does hereby authorize and direct the Clerk of Court and *Ex Officio* Recorder of Mortgages for the Parish of _____, State of Louisiana, to CANCEL AND ERASE the Lien Statement recorded at _____ and to note this Release of Lien and Privilege in the margins of the inscription of the aforementioned Lien recorded in the records of that office, which presently burdens the property described in paragraph 2, above.

5.    That Claimant does hereby covenant and agree that it will, at the request of Harvest and without further consideration, execute and deliver such other documents and instruments, and take such other action, as may be necessary to more effectively release and discharge any and all liens and encumbrances of any kind arising from the Work.

IN WITNESS WHEREOF, this instrument is executed on the \_\_\_ day of _____, 2009, in the presence of the undersigned competent witnesses and me, Notary, after a reading of the whole.

WITNESSES:                CLAIMANT

_____
Printed Name: _____    By: _____
                             Name: _____
                             Title: _____

_____
Printed Name: _____

2

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _____ DAY
OF _____, 2009.

_____
NOTARY PUBLIC

3

# EXHIBIT C

## FORM OF AMENDED ORGANIZATIONAL DOCUMENTS

C-1

## AMENDED AND RESTATED ARTICLES OF INCORPORATION

### OF

### SARATOGA RESOURCES, INC.

FIRST: Saratoga Resources, Inc. (the "Corporation"), pursuant to the provisions of Article 4.07 of the Texas Business Corporation Act, hereby adopts restated articles of incorporation which accurately copy the articles of incorporation (the "Original Articles") and all amendments thereto that are in effect to date and as further amended by such restated articles of incorporation as hereinafter set forth and which contain no other change in any provision thereof.

SECOND: The articles of incorporation of the corporation are amended by the restated articles of incorporation as follows:

The Original Articles of the Corporation are amended by these Restated Articles as follows: (i) the first paragraph of ARTICLE FOUR is amended to add language to restrict the issuance of nonvoting equity securities in accordance with Section 1123(a)(6) of the United States Bankruptcy Code, as amended; (ii) ARTICLE SIX is deleted; (iii) ARTICLES SEVEN and after are renumbered to reflect the deletion of Article Six and references to Article numbers are revised accordingly; and (iv) ARTICLE ELEVEN is amended and restated to indicate the names and addresses of the current directors.

THIRD: Each such amendment made by the restated articles of incorporation has been approved in the manner required by the Texas Business Corporation Act and the addition of language restricting the issuance of nonvoting equity securities in accordance with Section 1123(a)(6) of the United States Bankruptcy Code, as amended, is provided for in an Order of the United States Bankruptcy Court for the Western District of Louisiana confirming the Corporation's Plan of Reorganization.

FOURTH: The articles of incorporation and all amendments and supplements thereto are hereby superseded by the following restated articles of incorporation which accurately copy the entire text thereof and as amended as above set forth:

### ARTICLE ONE

The name of the Corporation is Saratoga Resources, Inc.

### ARTICLE TWO

The period of duration of the Corporation is perpetual.

## ARTICLE THREE

The purpose for which the Corporation is organized is to engage in the transaction of any and all lawful businesses for which corporations may be incorporated under the Texas Business Corporation Act.

## ARTICLE FOUR

The total number of shares of all classes of capital stock which the Corporation shall have authority to issue is 100,100,000 of which (a) 100,000,000 shares shall be designated as Common Stock, par value $0.001 per share, and (b) 100,000 shares shall be designated as Preferred Stock, par value $0.001 per share. Notwithstanding anything herein to the contrary, from and after the date these Amended and Restated Articles of Incorporation become effective, the Corporation shall be prohibited from issuing nonvoting equity securities in accordance with and to the extent required by Section 1123(a)(6) of the United States Bankruptcy Code, as amended. This Paragraph (6) shall have no further force and effect beyond that required by Section 1123(a)(6) and for as long as Section 1123(a)(6) is in effect and applicable to the Corporation.

The following is a statement of the designations, preferences, limitations, and relative rights, including voting rights, in respect of the classes of stock of the Corporation and of the authority with respect thereto expressly vested in the Board of Directors of the Corporation:

## COMMON STOCK

(1) Each share of Common Stock of the Corporation shall have identical rights and privileges in every respect. The holders of shares of Common Stock shall be entitled to vote upon all matters submitted to a vote of the shareholders of the Corporation and shall be entitled to one vote for each share of Common Stock held.

(2) Subject to the prior rights and preferences, if any, applicable to shares of the Preferred Stock or any series thereof, the holders of shares of the Common Stock shall be entitled to receive such dividends (payable in cash, stock, or otherwise) as may be declared thereon by the Board of Directors at any time and from time to time out of any funds of the Corporation legally available therefor.

(3) In the event of any voluntary or involuntary liquidation, dissolution, or winding-up of the Corporation, after distribution in full of the preferential amounts, if any, to be distributed to the holders of shares of the Preferred Stock or any series thereof, the holders of shares of the Common Stock shall be entitled to receive all of the remaining assets of the Corporation available for distribution to its shareholders, ratably in proportion to the number of

2

shares of the Common Stock held by them. A liquidation, dissolution, or winding-up of the Corporation, as such terms are used in this Paragraph (3), shall not be deemed to be occasioned by or to include any merger of the Corporation with or into one or more corporations or other entities, any acquisition or exchange of the outstanding shares of one or more classes or series of the Corporation, or any sale, lease, exchange, or other disposition of all or a part of the assets of the Corporation.

## PREFERRED STOCK

(4) Shares of the Preferred Stock may be issued from time to time in one or more series, the shares of each series to have such designations, preferences, limitations, and relative rights, including voting rights, as shall be stated and expressed herein or in a resolution or resolutions providing for the issue of such series adopted by the Board of Directors of the Corporation. Each such series of Preferred Stock shall be designated so as to distinguish the shares thereof from the shares of all other series and classes. The Board of Directors of the Corporation is hereby expressly authorized, subject to the limitations provided by law, to establish and designate series of the Preferred Stock, to fix the number of shares constituting each series, and to fix the designations and the preferences, limitations, and relative rights, including voting rights, of the shares of each series and the variations of the relative rights and preferences as between series, and to increase and to decrease the number of shares constituting each series, provided that the Board of Directors may not decrease the number of shares within a series to less than the number of shares within such series that are then issued. The relative powers, rights, preferences, and limitations may vary between and among series of Preferred Stock in any and all respects so long as all shares of the same series are identical in all respects, except that shares of any such series issued at different times may have different dates from which dividends thereon cumulate. The authority of the Board of Directors of the Corporation with respect to each series shall include, but shall not be limited to, the authority to determine the following:

(a) The designation of such series;

(b) The number of shares initially constituting such series;

(c) The rate or rates and the times at which dividends on the shares of such series shall be paid, the periods in respect of which dividends are payable, the conditions upon such dividends, the relationship and preferences, if any, of such dividends to dividends payable on any other class or series of shares, whether or not such dividends shall be cumulative, partially cumulative, or noncumulative, if such dividends shall be cumulative or partially cumulative, the date or dates from and after which, and the amounts in which, they shall accumulate, whether such dividends shall be share dividends, cash or other dividends, or any combination thereof, and if such dividends shall include share dividends, whether such share

3

dividends shall be payable in shares of the same or any other class or series of shares of the Corporation (whether now or hereafter authorized), or any combination thereof and the other terms and conditions, if any, applicable to dividends on shares of such series;

(d) Whether or not the shares of such series shall be redeemable or subject to repurchase at the option of the Corporation or the holder thereof or upon the happening of a specified event, if such shares shall be redeemable, the terms and conditions of such redemption, including but not limited to the date or dates upon or after which such shares shall be redeemable, the amount per share which shall be payable upon such redemption, which amount may vary under different conditions and at different redemption dates, and whether such amount shall be payable in cash, property, or rights, including securities of the Corporation or another corporation;

(e) The rights of the holders of shares of such series (which may vary depending upon the circumstances or nature of such liquidation, dissolution, or winding up) in the event of the voluntary or involuntary liquidation, dissolution, or winding-up of the Corporation and the relationship or preference, if any, of such rights to rights of holders of stock of any other class or series. A liquidation, dissolution, or winding-up of the Corporation, as such terms are used in this subparagraph (e), shall not be deemed to be occasioned by or to include any merger of the Corporation with or into one or more corporations or other entities, any acquisition or exchange of the outstanding shares of one or more classes or series of the Corporation, or any sale, lease, exchange, or other disposition of all or a part of the assets of the Corporation;

(f) Whether or not the shares of such series shall have voting powers and, if such shares shall have such voting powers, the terms and conditions thereof, including, but not limited to, the right of the holders of such shares to vote as a separate class either alone or with the holders of shares of one or more other classes or series of stock and the right to have more (or less) than one vote per share; provided, however, that the right to cumulate votes for the election of directors is expressly denied and prohibited;

(g) Whether or not a sinking fund shall be provided for the redemption of the shares of such series and, if such a sinking fund shall be provided, the terms and conditions thereof;

(h) Whether or not a purchase fund shall be provided for the shares of such series and, if such a purchase fund shall be provided, the terms and conditions thereof;

(i) Whether or not the shares of such series, at the option of either the Corporation or the holder or upon the happening of a specified event, shall be convertible into stock of any other class or series and, if such shares shall be so convertible, the terms and

4

conditions of conversion, including, but not limited to, any provision for the adjustment of the conversion rate or the conversion price;

(J) Whether or not the shares of such series, at the option of either the Corporation or the holder or upon the happening of a specified event, shall be exchangeable for securities, indebtedness, or property of the Corporation and, if such shares shall be so exchangeable, the terms and conditions of exchange, including, but not limited to, any provision for the adjustment of the exchange rate or the exchange price; and

(K) Any other preferences, limitations, and relative rights as shall not be inconsistent with the provisions of this Article Four or the limitations provided by law.

(5) Except as otherwise required by law or in any resolution of the Board of Directors creating any series of Preferred Stock, the holders of shares of Preferred Stock and all series thereof who are entitled to vote shall vote together with the holders of shares of Common Stock, and not separately by class.

## ARTICLE FIVE

No holder of any shares of capital stock of the Corporation, whether now or hereafter authorized, shall, as such holder, have any preemptive or preferential right to receive, purchase, or subscribe to (a) any unissued or treasury shares of any class of stock (whether now or hereafter authorized) of the Corporation, (b) any obligations, evidences of indebtedness, or other securities of the Corporation convertible into or exchangeable for, or carrying or accompanied by any rights to receive, purchase, or subscribe to, any such unissued or treasury shares, (c) any right of subscription to or to receive, or any warrant or option for the purchase of, any of the foregoing securities, or (d) any other securities that may be issued or sold by the Corporation.

## ARTICLE SIX

Cumulative voting for the election of directors is expressly denied and prohibited.

## ARTICLE SEVEN

No contract or transaction between the Corporation and one or more of its directors or officers, or between the Corporation and any other corporation, partnership, association, or other organization in which one or more of its directors or officers are directors or officers or have a financial interest, shall be void or voidable solely for this reason, solely because the director or officer is present at or participates in the meeting of the Board of Directors or committee thereof which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if:

5

(a) The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Directors or the committee, and the Board of Directors or committee in good faith authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors, even though the disinterested directors be less than a quorum; or

(b) The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the shareholders; or

(c) The contract or transaction is fair as to the Corporation as of the time it is authorized, approved, or ratified by the Board of Directors, a committee thereof, or the shareholders.

Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or of a committee which authorizes the contract or transaction.

This provision shall not be construed to invalidate a contract or transaction which would be valid in the absence of this provision or to subject any director or officer to any liability that he would not be subject to in the absence of this provision.

ARTICLE EIGHT

The Corporation shall indemnify any person who was, is, or is threatened to be made a named defendant or respondent in a proceeding (as hereinafter defined) because the person (i) is or was a director or officer of the Corporation or (ii) while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan, or other enterprise, to the fullest extent that a corporation may grant indemnification to a director under the Texas Business Corporation Act, as the same exists or may hereafter be amended.

Such right shall be a contract right and as such shall run to the benefit of any director or officer who is elected and accepts the position of director or officer of the Corporation or elects to continue to serve as a director or officer of the Corporation while this Article Eight is in effect. Any repeal or amendment of this Article Eight shall be prospective only and shall not limit the rights of any such director or officer or the obligations of the Corporation with respect to any claim arising from or related to the services of such director or officer in any of the foregoing

6

capacities prior to any such repeal or amendment of this Article Eight. Such right shall include the right to be paid or reimbursed by the Corporation for expenses incurred in defending any such proceeding in advance of its final disposition to the maximum extent permitted under the Texas Business Corporation Act, as the same exists or may hereafter be amended. If a claim for indemnification or advancement of expenses hereunder is not paid in full by the Corporation within ninety days after a written claim has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim, and, if successful in whole or in part, the claimant shall be entitled to be paid also the expenses of prosecuting such claim. It shall be a defense to any such action that such indemnification or advancement of costs of defense are not permitted under the Texas Business Corporation Act, but the burden of proving such defense shall be on the Corporation. Neither the failure of the Corporation (including its Board of Directors or any committee thereof, special legal counsel, or shareholders) to have made its determination prior to the commencement of such action that indemnification of, or advancement of costs of defense to, the claimant is permissible in the circumstances nor an actual determination by the Corporation (including its Board of Directors or any committee thereof, special legal counsel, or shareholders) that such indemnification or advancement is not permissible, shall be a defense to the action or create a presumption that such indemnification or advancement is not permissible. In the event of the death of any person having a right of indemnification under the foregoing provisions, such right shall inure to the benefit of his heirs, executors, administrators, and personal representatives. The rights conferred above shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, bylaw, resolution of shareholders or directors, agreement, or otherwise.

The Corporation may additionally indemnify any person covered by the grant of mandatory indemnification contained above to such further extent as is permitted by law and may indemnify any other person to the fullest extent permitted by law.

To the extent permitted by then applicable law, the grant of mandatory indemnification to any person pursuant to this Article Eight shall extend to proceedings involving the negligence of such person.

As used herein, the term "proceeding" means any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, arbitrative, or investigative, any appeal in such an action, suit, or proceeding, and any inquiry or investigation that could lead to such an action, suit, or proceeding.

ARTICLE NINE

Any action of the Corporation which, under the provisions of the Texas Business Corporation Act or any other applicable law, is required to be authorized or approved by the

7

holders of any specified fraction which is in excess of one-half or any specified percentage which is in excess of 50% of the outstanding shares (or of any class or series thereof) of the Corporation shall, notwithstanding any law, be deemed effectively and properly authorized or approved if authorized or approved by the vote of the holders of more than 50% of the outstanding shares entitled to vote thereon (or, if the holders of any class or series of the Corporation's shares shall be entitled by the Texas Business Corporation Act or any other applicable law to vote thereon separately as a class, by the vote of the holders of more than 50% of the outstanding shares of each such class or series). Without limiting the generality of the foregoing, the foregoing provisions of this Article Nine shall be applicable to any required shareholder authorization or approval of: (a) any amendment to the Articles of Incorporation; (b) any plan of merger, share exchange, or reorganization involving the Corporation; (c) any sale, lease, exchange, or other disposition of all, or substantially all, the property and assets of the Corporation; and (d) any voluntary dissolution of the Corporation.

Directors of the Corporation shall be elected by a plurality of the votes cast by the holders of shares entitled to vote in the election of directors of the Corporation at a meeting of shareholders at which a quorum is present.

Except as otherwise provided in this Article Nine or as otherwise required by the Texas Business Corporation Act or other applicable law, with respect to any matter, the affirmative vote of the holders of a majority of the Corporation's shares entitled to vote on that matter and represented in person or by proxy at a meeting of shareholders at which a quorum is present shall be the act of the shareholders.

Nothing contained in this Article Nine is intended to require shareholder authorization or approval of any action of the Corporation whatsoever unless such approval is specifically required by the other provisions of the Articles of Incorporation, the bylaws of the Corporation, or by the Texas Business Corporation Act or other applicable law.

## ARTICLE TEN

The street address of the registered office of the Corporation is 7500 San Felipe, Suite 675, Houston, Texas 77063, and the name of its registered agent at such address is Thomas F. Cooke.

## ARTICLE ELEVEN

The number of directors currently constituting the Board of Directors is four and the name and address of each person who is to serve as director until the next annual meeting of shareholders and until such director's successor is elected and qualified or, if earlier, until such director's death, resignation, or removal as director, are as follows:

8

| NAME | ADDRESS |
|------|---------|
| Thomas F. Cooke | 7500 San Felipe, Suite 675<br>Houston, Texas 77063 |
| Andy C. Clifford | 7500 San Felipe, Suite 675<br>Houston, Texas 77063 |
| Kevin Smith | 7500 San Felipe, Suite 675<br>Houston, Texas 77063 |
| Rex H. White | 7500 San Felipe, Suite 675<br>Houston, Texas 77063 |

## ARTICLE TWELVE

To the fullest extent permitted by applicable law, a director of the Corporation shall not be liable to the Corporation or its shareholders for monetary damages for an act or omission in the director's capacity as a director, except that this Article Twelve does not eliminate or limit the liability of a director of the Corporation to the extent the director is found liable for:

(a) a breach of the director's duty of loyalty to the Corporation or its shareholders;

(b) an act or omission not in good faith that constitutes a breach of duty of the director to the Corporation or an act or omission that involves intentional misconduct or a knowing violation of the law;

(c) a transaction from which the director received an improper benefit, whether or not the benefit resulted from an action taken within the scope of the director's office; or

(d) an act or omission for which the liability of a director is expressly provided by an applicable statute.

Any repeal or amendment of this Article Twelve by the shareholders of the Corporation shall be prospective only and shall not adversely affect any limitation on the personal liability of a director of the Corporation arising from an act or omission occurring prior to the time of such repeal or amendment. In addition to the circumstances in which a director of the Corporation is not personally liable as set forth in the foregoing provisions of this Article Twelve, a director

9

shall not be liable to the Corporation or its shareholders to such further extent as permitted by any law hereafter enacted, including without limitation any subsequent amendment to the Texas Miscellaneous Corporation Laws Act or the Texas Business Corporation Act.

## ARTICLE THIRTEEN

Any action which may be taken, or which is required by law or the Articles of Incorporation or bylaws of the Corporation to be taken, at any annual or special meeting of shareholders may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall have been signed by the holder or holders of shares having not less than the minimum number of votes that would be necessary to take such action at a meeting at which the holders of all shares entitled to vote on the action were present and voted.

EXECUTED this ___ day of _____ 2009.

SARATOGA RESOURCES, INC.

By:_____

Thomas F. Cooke
Chief Executive Officer

10