**SO ORDERED.**

**SIGNED April 01, 2010.**



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| HARVEST OIL & GAS, LLC, *et al.* | § § | CASE NO. 09-50397 (Chapter 11) |
| Debtors | § § § | (JOINTLY ADMINISTERED) |

## THIRTEENTH INTERIM ORDER AUTHORIZING DEBTORS TO USE CASH COLLATERAL

**CAME ON** for consideration the Emergency Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection (the "Motion") filed by Harvest Oil & Gas, LLC ("Harvest Oil"), Saratoga Resources, Inc. ("Saratoga"), The Harvest Group LLC ("Harvest Group," and together with Harvest Oil, the "Harvest Companies"), Lobo Operating, Inc. ("Lobo Operating"), and Lobo Resources, Inc. ("Lobo Resources"), each a debtor and debtor-in-possession (Harvest Oil, Saratoga, Harvest Group, Lobo Operating, and Lobo Resources, individually referred to herein as a "Debtor" and collectively referred to herein as the

1

"Debtors"), and this Court having reviewed the Motion, Notice provided to parties-in-interest, considered the evidence, and announced its findings in the record, further finds that:

The limited use of the Cash Collateral (defined below) on an interim basis requested in the Motion is necessary for the preservation and continuation of the Debtors' businesses and is authorized by Section 363(c)(2) of the Bankruptcy Code.

The granting of the Motion on an interim basis is in the best interest of the Debtors' estates and its creditors and should be granted in accordance with the terms and provisions of this Order.

Therefore, it is **ORDERED** that:

1. The Debtors are authorized to use, on an interim basis, cash collateral, including, but not limited to all revenue collected in the ordinary course of business on which Wayzata Investment Partners, LLC, as agent for certain lenders ("Wayzata") and Macquarie Bank Limited and its affiliates ("Macquarie," and with Wayzata, the "Prepetition Lenders") assert security interests and liens (the "Cash Collateral") for the purpose of meeting their payroll, ongoing operational expenses and other ordinary course of business costs and expenses in accordance with and limited by the terms and conditions of this Order and the interim budget ("Interim Budget," attached hereto as Exhibit "A").

2. The Debtors shall not pay wages or salary to any party who is not working for the Debtors.

3. Any and all revenues or other Cash Collateral received on a post-petition basis by the Debtors shall be collected, received, deposited and maintained by the Debtors in their DIP account (the "DIP Account") and shall not be used except in strict accordance with the terms of this Order or as may be directed or authorized by further order of this Court.

4. The Debtors are authorized to use the Cash Collateral to pay the expenses shown on the interim budget attached hereto as Exhibit "A" *nunc pro tunc* from April 1, 2010, through April 30, 2010, or such date as the Court enters a Final Order Authorizing Debtors to Use Cash Collateral. To the extent that the Effective Date under the Debtors' Third Amended Plan of Reorganization, as it may be immaterially modified, does not occur prior thereto, the Debtors are further authorized to use Cash Collateral from May 1, 2010, through May 31, 2010. Consistent with the procedure employed regarding use of cash collateral throughout the case, the Debtors shall circulate via email a proposed interim cash collateral budget for the period May 1-31, 2010 to counsel for the Lenders and the Lien Claimants (as defined hereinbelow) on or before April 26, 2010 at 5:00 p.m. (Central Time). Counsel for the Lenders and Lien Claimants shall have until April 29, 2010 at 5:00 p.m. (Central Time) to respond via email to Debtors' counsel regarding any objections to the proposed budget. If no objections are received to the May cash collateral budget by the deadline and the Court has not entered a Final Order Authorizing Debtors to Use Cash Collateral, the Fourteenth Interim Cash Collateral Order, consistent with the form of this Order, shall be submitted to the Court by the Debtors. If there are objections to the May cash collateral budget which are not resolved by close of business on April 29, 2010, the Debtors may request an emergency hearing to consider any such objections.

5. The Prepetition Lenders shall retain their respective security interests and liens on the Cash Collateral to the fullest extent and relative priority as set forth in their respective pre-petition security agreements, if established and if perfected under applicable non-bankruptcy law.

6. As partial adequate protection for any use or diminution in the value of the collateral of the Prepetition Lenders, the Prepetition Lenders, to the same extent and in the same

3

priority as may be validly held by the Prepetition Lenders as of the petition date, shall have and are hereby each granted, effective as of the petition date valid and automatically perfected security interests and liens in and upon all of the property and assets of the Debtors' estates that are in the same categories and of the same types of property and assets that are included within the definition of their respective prepetition collateral ("Prepetition Collateral"), as may be created acquired, received, and/or obtained postpetition, including but not limited to, all Cash Collateral in the DIP Account, each such liens having the same validity and priority, and being of the same extent with respect to all such property as existed on the petition date.

7. Certain parties, including, but not limited to, Axxis Drilling, Baker Hughes Oilfield Operations, Inc. d/b/a Baker Oil Tools, Baker Hughes Oilfield Operations, Inc. d/b/a Baker Petrolite, Fastorq, LLC, Production Management Industries, LLC, Superior Energy Services, LLC, X-Chem, Inc., Quality Energy Services, Inc., and Precision Systems, LLC (the "Lien Claimants") may have filed or intend to file lien claims under applicable non-bankruptcy law against certain oil and gas properties owned and/or operated by the Debtors (the "Affected Properties"). The Debtors acknowledge that certain property, including, but not limited to, the production revenues and proceeds stemming from the Affected Properties may constitute the Cash Collateral of the Lien Claimants. The Debtors further acknowledge that all monies received by the Debtors after the petition date that arise out of joint interest billings issued by the Debtor in connection with the operation of the Affected Properties may constitute the Cash Collateral of the Lien Claimants. The Debtors consent to granting replacement liens which shall be deemed perfected without any further actions by the Debtors or the Lien Claimants, and such Lien Claimants shall retain their respective liens on the Cash Collateral and/or the same types of property and assets subject to their liens, to the same extent and relative priority as may be

established by the Lien Claimants under applicable non-bankruptcy law, if established and if perfected and unavoidable, *nunc pro tunc* as of the Petition Date. The replacement liens granted herein constitute partial adequate protection for any use or diminution in the value of the collateral of the Lien Claimants. The Debtors reserve any and all of their rights to contest the validity, amount and priority of any and all liens asserted by the Lien Claimants. The Lien Claimants consent to the Debtors' use of Cash Collateral pursuant to the terms of this Order, but reserve all of their rights to contest the Debtors' use of Cash Collateral at the final hearing on the Motion. All rights of the Lien Claimants to contest the validity, amount and priority of any and all other liens asserted by any other Lien Claimant and/or the Prepetition Lenders are reserved. All rights of the Prepetition Lenders to contest the validity, amount and priority of any and all liens asserted by the Lien Claimants are reserved.

8. The liens and security interests granted and created herein shall, by virtue of and subject to the terms of this Order, constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities granted hereunder, without the necessity of creating, filing, recording, or serving any mortgages, deeds of trust, financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the Prepetition Lenders in this Order. To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the liens and security interests authorized and created by this Order, or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, otherwise applicable federal law, and the judicial power of this Court. Notwithstanding the foregoing, the Debtors

agree to execute such documents and give such further assurances as may be necessary to perfect the security interests and liens granted as adequate protection herein, and the Prepetition Lenders be and are hereby authorized to take such action as in their discretion they deem appropriate to give effect to any such financing statements, mortgages, and/or liens to evidence the postpetition liens to the extent created hereunder.

9. The adequate protection provided herein is not exclusive and is provided (i) without prejudice to the Prepetition Lenders' rights regarding additional adequate protection and (ii) without prejudice to the right of the Debtors to assert that no adequate protection is warranted or that lesser adequate protection is warranted. For the avoidance of doubt, (a) the Prepetition Lenders' reserve, *inter alia,* their right to request and obtain adequate protection payments including, without limitation, payment of all accrued interest, fees, costs and expenses of the Prepetition Lenders, and (b) the Debtors reserve *inter alia* their right to request that adequate protection be terminated, suspended, reduced or otherwise modified..

10. The Prepetition Lenders shall have reasonable access upon at least five (5) business days notice during normal business hours to conduct inspections of the Prepetition Collateral and to review the financial and other records of the Debtors. Furthermore, the Prepetition Lenders shall have reasonable access upon at least five (5) business days notice to commence inspections of the physical assets and to review any and all records of the Debtors for the purpose of providing engineering and valuation advice and analysis. The Debtors shall reasonably cooperate with the Prepetition Lenders and shall make the Debtors' employees reasonably available to the Prepetition Lenders to conduct such inspections and reviews upon written request, and the parties shall request that their respective engineers and/or independent engineers cooperate with respect to the requirements of this section of this Order; provided,

however, that all parties agree to take whatever steps are necessary to minimize any disruption on the Debtors' business operations, and provided further that Debtors shall be entitled to seek relief from the Court by means of hearing upon five (5) days notice to the party requesting information, should Debtors determine that any request made hereunder is unreasonable or unduly burdensome.

11. The Debtors are authorized and directed to provide to the Prepetition Lenders all of the documentation, reports, schedules, financial statements, insurance policies, audits, and other information as may reasonably be requested by either of the Prepetition Lenders from time to time under the respective credit agreements among the Debtors and the Prepetition Lenders. Notwithstanding the immediately foregoing, all parties reserve the right to enter into confidentiality agreements subject to scrutiny by the Court, upon notice. Prepetition Lenders shall be entitled and authorized to share between/among the Prepetition Lenders all such information provided under or in connection with this Order.

12. The Debtors are authorized and directed to provide to the Prepetition Lenders and the Lien Claimants written notice of their intended use of cash included in the Interim Budget for the period May 30, 2009 through June 28, 2009, under the line item of "Miscellaneous Capex $150,000" for emergency use, previously approved in the Fourth Interim Cash Collateral Order. The "Miscellaneous Capex $150,000" fund for emergency use has not been depleted and shall carry forward under this Order. The Prepetition Lenders and the Lien Claimants shall have two (2) business days to notify the Debtors, in writing, of any objections to the proposed emergency use of cash under the Miscellaneous Capex line item. In the event that any of the Prepetition Lenders and/or Lien Claimants objects to the proposed emergency use of cash under the

7

Miscellaneous Capex line item, the Debtors shall be entitled to seek relief from the Court by means of hearing upon two (2) business days notice.

13. The Debtors shall provide the Prepetition Lenders and the Lien Claimants a weekly reporting of cash expenditures reconciled with the line items on the Interim Budget on or before the sixth (6th) business day following the close of the reporting period. The weekly reporting periods shall close every Friday.

14. On a weekly basis and on or before the sixth (6th) business day following the close of the reporting period, the Debtors shall provide to the Prepetition Lenders and the Lien Claimants the Debtors' updated and then-current complete working financial model in a form and function consistent with such models previously provided to the Prepetition Lenders, together with the Debtors' most recent accounts receivable and payables aging report, both in Excel format (specifically, *.xls). The reporting periods shall close every Friday.

15. The Debtors shall provide the Prepetition Lenders and the Lien Claimants their most recent unaudited financials, including balance sheets, cash flows, income statements, and profit and loss statements, on a monthly basis, on or before the 20th of the month for the preceding month. The reporting periods for the unaudited financials shall close on the last day of each month.

16. The Prepetition Lenders and the Lien Claimants agree and acknowledge that the Debtors close their books once a month and that documents provided pursuant to this Order on a weekly basis are interim, preliminary documents in draft form, may be incomplete, and are subject to correction, revision, and/or restatement in whole or in part, provided, however, that the documents provided by the Debtors shall not be knowingly and/or intentionally misleading.

17. The Debtors and Macquarie agree that Macquarie may defer or suspend, at the discretion of Macquarie, further semi-annual borrowing base redeterminations provided for under the Credit Agreement between Macquarie and the Debtors, with such semi-annual borrowing base redeterminations to be re-implemented at the discretion of Macquarie upon fifteen (15) days written notice to the Debtors.

18. Each of the Prepetition Lenders fully reserve all rights and all claims as against the Debtors and/or any other parties, including without limitation the right to assert a claim under Bankruptcy Code § 507(b), and such other rights that they may have under applicable law, regulation or other similar legal authority, and as well to defend against any claim or right asserted by any or all of the Debtors. Each of the Debtors reserve all rights to defend against any such claim under Bankruptcy Code § 507(b), and to oppose or defend any such other rights or claims asserted by the Prepetition Lenders under applicable law, regulation or other similar legal authority, and Debtors fully reserve all rights and claims and all such other rights and claims that they may have under applicable law, regulation or other similar legal authority. Notwithstanding anything to the contrary in this Order, nothing herein shall be deemed to be a waiver or release by Debtors or by the Prepetition Lenders of any rights, claims, suits, actions or demands against any entity, whether arising under the Bankruptcy Code, under applicable state law or otherwise.

19. The provisions of this Order shall be binding upon and shall inure to the benefit of Wayzata and Macquarie and the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for the Debtors or with respect to the Debtors' property).

20. The provisions of this Order shall be immediately effective upon entry of this Order by the Court.

21. A final hearing on the Debtors' Emergency Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection was heard on the 1st, 2nd, 5th, 6th, and 7th days of October, 2009, before the United States Bankruptcy Court, Courtroom, First Floor, United States Courthouse, 214 Jefferson Street, Suite 100, Lafayette, Louisiana 70501.

22. The consent of the Prepetition Lenders to the entry of this Order and to the limited use of Cash Collateral as provided hereby shall not be deemed a consent to any further use of Cash Collateral and shall be without prejudice to their respective rights and remedies and those of the Debtors in these chapter 11 cases, including but not limited to the right to oppose or to seek further use of Cash Collateral, and, subject to the terms hereof, nothing herein shall be deemed or construed to waive, limit, or modify the rights of any party to seek additional relief in these cases in accordance with any provision of the Bankruptcy Code or applicable law or the rights of any other party to oppose the same.

###

Respectfully Submitted,

**Adams and Reese LLP**

/s/ Lisa M. Hedrick
John M. Duck (LA Bar Roll # 5104)
Robin B. Cheatham (LA Bar Roll # 4004)
Lisa M. Hedrick (LA Bar Roll # 26421)
4500 One Shell Square
New Orleans, LA 70139
(504) 581-3234
Fax: 504-566-0210
**Attorneys for the Debtors**

Saratoga Resources, Inc.
Weekly Operating Cash Budget

| Description | Period 4/1/2010 4/8/2010 | Period 4/9/2010 4/15/2010 | Period 4/16/2010 4/22/2010 | Period 4/23/2010 4/30/2010 |
|---|---:|---:|---:|---:|
| **Beginning Cash Balance** | $ 21,486,714 | $ 19,753,082 | $ 19,277,587 | $ 23,119,231 |
| **Receipts** | | | | |
| Oil & Gas Receipts | - | - | 4,157,473 | 738,437 |
| JIB Receipts | - | - | - | - |
| Hedges (Note 1) | - | - | - | - |
| Other | - | - | - | - |
| **Total Receipts** | - | - | 4,157,473 | 738,437 |
| **Disbursements** | | | | |
| Lease Operating Expense | 259,860 | 259,860 | 259,860 | 259,860 |
| Workover Expense | 600,000 | - | - | - |
| Capital Expenditures | 86,000 | - | - | - |
| Plugging & Abandonment Fund | - | - | - | 39,858 |
| Royalties & Revenue Payable | - | - | - | 1,014,862 |
| Severance Taxes & Marketing Costs | - | - | - | 645,934 |
| Ad Valorem Taxes | - | - | - | - |
| General and Administrative | 725,612 | 215,636 | 55,969 | 120,636 |
| Insurance | - | - | - | - |
| Interest expense | - | - | - | - |
| Xplore settlement | - | - | - | - |
| Royalty audit - partial payments | 62,160 | - | - | - |
| Accruals | - | - | - | - |
| **Total Disbursements** | 1,733,632 | 475,495 | 315,829 | 2,081,150 |
| **Other** | - | - | - | - |
| **Ending Cash Balance** | $ 19,753,082 | $ 19,277,587 | $ 23,119,231 | $ 21,776,518 |

Note 1: Represents expected settlement proceeds of hedge contracts already in place at the date of filing
The actual amount of settlement proceeds can vary from the amount presented.

## Saratoga Resources, Inc.
## Oil Gas Receipts

| Field | Period | | | |
|---|---|---|---|---|
| | 4/1/2010 4/8/2010 | 4/9/2010 4/15/2010 | 4/16/2010 4/22/2010 | 4/23/2010 4/30/2010 |
| Grand Bay | - | - | 1,928,628 | 198,704 |
| Breton Sound 32 | - | - | 1,349,998 | 113,369 |
| Breton Sound 51 | - | - | 6,741 | 22,031 |
| Main Pass 25 | - | - | 600,955 | 20,083 |
| Main Pass 46 | - | - | 195,650 | 23,470 |
| Main Pass 47 | - | - | - | 153,149 |
| Vermillion 16 | - | - | 75,501 | 142,303 |
| Lake Fortuna | - | - | - | 65,327 |
| **Total revenue** | $ - | $ - | $ 4,157,473 | $ 738,437 |

Saratoga Resources, Inc.
Lease Operating Expense

| Field | Period | | | |
|---|---|---|---|---|
| | 4/1/2010 4/8/2010 | 4/9/2010 4/15/2010 | 4/16/2010 4/22/2010 | 4/23/2010 4/30/2010 |
| Grand Bay | 123,896 | 123,896 | 123,896 | 123,896 |
| Breton Sound 32 | 64,684 | 64,684 | 64,684 | 64,684 |
| Breton Sound 51 | 6,667 | 6,667 | 6,667 | 6,667 |
| Main Pass 25 | 23,513 | 23,513 | 23,513 | 23,513 |
| Main Pass 46/47/52 | 35,834 | 35,834 | 35,834 | 35,834 |
| Vermillion 16 | 4,667 | 4,667 | 4,667 | 4,667 |
| Lake Fortuna | 600 | 600 | 600 | 600 |
| **Total lease operating expense** | $ 259,860 | $ 259,860 | $ 259,860 | $ 259,860 |

Saratoga Resources, Inc.
Workover Expenditures

| Project | Period | | | |
| --- | --- | --- | --- | --- |
| | 4/1/2010 4/8/2010 | 4/9/2010 4/15/2010 | 4/16/2010 4/22/2010 | 4/23/2010 4/30/2010 |
| GB - SL 195 QQ #204 - Workover | $ 300,000 | $ - | $ - | $ - |
| GB - SL 195 QQ #193 - Workover | 300,000 | - | - | |
| Total workover | $ 600,000 | $ - | $ - | $ - |

Saratoga Resources, Inc.
Capital Expenditures

| Project | Period | | | |
|---|---|---|---|---|
| | 4/1/2010 4/8/2010 | 4/9/2010 4/15/2010 | 4/16/2010 4/22/2010 | 4/23/2010 4/30/2010 |
| GB - Repair green machine work barge - Facilities | $ 37,000 | $ - | $ - | $ - |
| GB - Repair compressor unit #1 - Facilites | 27,000 | - | - | - |
| GB - Overhaul tank battery 12 - Facilities | 22,000 | - | - | - |
| Total capital expenditures | $ 86,000 | $ - | $ - | $ - |

Saratoga Resources, Inc.
General Administrative Expense

| Account Name | Period 4/1/2010 4/8/2010 | Period 4/9/2010 4/15/2010 | Period 4/16/2010 4/22/2010 | Period 4/23/2010 4/30/2010 |
|---|---:|---:|---:|---:|
| **General & administrative:** | | | | |
| Salaries and wages | $ - | $ 80,833 | $ - | $ 80,833 |
| Payroll burdens | 16,167 | - | 16,167 | - |
| Computer expense | 1,033 | 1,033 | 1,033 | 1,033 |
| Office rent | 18,022 | - | - | - |
| Office supplies | 706 | 706 | 706 | 706 |
| Postage and courier | 71 | 71 | 71 | 71 |
| Printing and duplication | 4,125 | 4,125 | 4,125 | 4,125 |
| Professional services - land, reserve | 18,750 | 18,750 | 18,750 | 18,750 |
| Promotion | 37 | 37 | 37 | 37 |
| Repairs and maintenance | 477 | 477 | 477 | 477 |
| Telephone and internet expense | 723 | 723 | 723 | 723 |
| Utilities | 364 | 364 | 364 | 364 |
| Consulting fees | 286 | 286 | 286 | 286 |
| Legal fees | 5,000 | 5,000 | 5,000 | 5,000 |
| Accounting, audit & tax | 60,000 | - | - | - |
| Contract labor | 1,621 | - | - | - |
| Sarbanes-Oxley | - | - | - | - |
| Travel and meals expense | 3,619 | 3,619 | 3,619 | 3,619 |
| GB Full field study | - | 53,000 | - | - |
| VM16 Full field study | - | 42,000 | - | - |
| Reserve report | - | - | - | - |
| Other | 4,611 | 4,611 | 4,611 | 4,611 |
| **Total G&A** | 135,612 | 215,636 | 55,969 | 120,636 |
| **Restructuring Fee Estimate:** | | | | |
| Adams & Reese | 235,000 | - | - | - |
| Schully Roberts | 75,000 | - | - | - |
| Mike Sanders (Note 5) | 10,000 | - | - | - |
| Creditor Committee Counsel | 45,000 | - | - | - |
| Grant Thorton | 100,000 | - | - | - |
| Equity committee | 125,000 | - | - | - |
| US Trustee fees | - | - | - | - |
| **Total Other G&A** | 590,000 | - | - | - |
| **Total Gross G&A** | $ 725,612 | $ 215,636 | $ 55,969 | $ 120,636 |